Storrs, C. J.
The question in this case is, whether the proceedings of the court of common council of the city of Hartford, in laying out and constructing the sewer in question over the land of the plaintiff in Lafayette street, were authorized by the charter of that city and the legislative acts amendatory thereof. The plaintiff claims that the only authority to construct that sewer is contained in the act of June 1, 1849, and that by that act it was necessary for the common council to appraise the damages to his land caused by taking it for the purpose of constructing and repairing such sewer through his land, and to take the other steps prescribed in that act in relation to a sewer laid out and constructed under it; and that, as such steps were omitted, the sewer in question was unlawfully constructed, and the assessment imposed upon and collected from him, for the benefit he derived from it, were unlawful, and therefore that its amount is recoverable in this suit. This claim assumes that the right of making and maintaining this sewer, depending upon that act, is an easement or servitude newly imposed upon the land, and for which the plaintiff is entitled to an assessment of damages as upon a new and original taking of the land for that purpose. If the plaintiff is correct *in his [ *372 J claim, that the right to construct this sewer is derived from that act, it would be difficult to resist his right to a recovsince confessedly the various steps required by it, in the making of a sewer under it, have not been taken. But we are of the opinion that, in regard to the sewer now in question, the provisions of that act have no application, but that the right to construct it depends upon previous amendments of the charter, especially those of June 5, 1829 and June 7, 1843, and which are ample for the purpose of justifying the proceedings of the common council of which the plaintiff complains. The amendment of June 5, 1829, gave to the city of Hartford the power, and made it its duty, to make and repair all public streets, highways and roads within the limits of that city, and conferred upon *304 the court of common council all necessary power for that purpose, (Sect. 1,) and relieved the town of Hartford, from its obligation to make or repair any such street, highway or road. There can not be a doubt that, in the laying out and establishment of a highway, the right of repairing and maintaining, as well as of originally constructing it, is embraced, and that therefore when damages are assessed to a person for laying out and constructing a road upon his land, those damages include compensation as well for the repairing of such road as its original construction. Such reparation embraces and extends to the making of such gutters, drains and sewers as are necessary and proper in order to preserve the highway in good condition for the purposes for which it was made. And for those purposes we have no doubt that it is as competent to construct drains and sewers below, as it is upon the surface of the ground. On ordinary country roads the gutters upon their sides are usually deemed -sufficient to carry off the water and filth upon them. In populous places however, where they accumulate in greater quantities, or where it may be necessary for the public to use for passing and other proper purposes every part of the highway, it is frequently requisite to make the drains of the highway beneath its surface, and the safety as well as the commodiousness of the public travel, and the healthfulness of the people in its [ *378 ] *vicinity, may also require it. It is no objection therefore to a sewer in a highway that is made beneath the surface of the ground, if the circumstances render it proper so to construct it; and that the sewer in question was, in this respect, properly made, is not denied. Such a sewer, like ordinary drains and gutters, falls within the class of ordinary repairs of. the highway, and the right of making such a repair is therefore included in the damages which were assessed to the owner of the land on its original establishment. And the original right and duty of the town of Hartford being devolved upon the city, the latter had a clear right to construct the sewer in question, unless that right is taken away or abridged by some other amendment of the charter. We look in vain for any such amendment.
By the act of June 7, 1843, the common council of the city were empowered to lay out and construct drains and common sewérs in any part or portion of the city of Hartford, and to assess the expenses thereof, or such part of said expenses as the court of common council should deem just and reasonable, upon any person or persons who are or may be, in the opinion of said court of common council, in any manner benefited thereby. This'act by its terms is not limited to those parts of the city *305 over which highways are established, but extends to every part and portion of the city. It provides for no assessment of damages to the owners of the land over which the drain or sewer is laid out, and it might admit of a question whether, for that reason, it is valid in regard to the laying out and making of a drain or sewer upon land not covered by a highway. It is not however necessary to determine that point in this case, as the sewer now in question was constructed upon an established highway, and in such a case it was clearly not necessary for the act to provide for compensation to the owner of the land for the building of such sewer, because such compensation had been already received by him, having been included in the damages paid to him for taking his land for a highway when it was originally established. This act, in our opinion, was not passed for the purpose of authorizing drains and sewers to be made *in the streets or highways of the city, for there [ *374 J was already sufficient power for that purpose, but only to enable the common council, in cases where they had a right to build them, to assess the whole or a just proportion of the expense on those persons who are specially benefited by them, and thus to relieve the city, on which the whole expense would otherwise fall, from the amount of such assessment. The constitutionally of the provision for such an assessment has not, nor, with an exception which will be hereafter noticed, has the propriety of the mode in which the plaintiff was assessed in this case, been questioned.
The act of June 21, 1849, on which the plaintiff relies, provides that whenever the common council of the city shall lay out a drain or common sewer in the city, “ in whole or in part through or across the land of individuals or corporations,” they shall appraise and pay to the owners of such lands the damages thereto, caused by taking the right of way to construct and repair the drain or sewer through or across such lands ; and provides for notice to the owners of the laying out and of the damages allowed, and for a re-appraisal of the damages on his application. We think that this act was not intended to modify or affect the power of the common council in regard to drains or sewers to be laid out and constructed in any of the streets or highways of the city, but only those which might be made elsewhere. We come to this conclusion from the peculiar language of the act, in its description of the land over which the drain or sewer therein mentioned should be laid out, and from the circumstance that, in regard to the land of individuals or corporations over which a street or highway had been established,, the common council, by virtue of the original condemnation of *306 the land for that purpose, would already, under their right of repairing the highway, have the power to make such drain or sewer without any new assessment of damages; and it can not be supposed that it was intended by that act to subject the city to pay again to the owner of land damages for a servitude upon it for which compensation had already been once made. We coniine the operation of that act, therefore, to such [ *375 ] *lands as had not been before subjected to such a servitude, and for the imposition of which no compensation had been made, which Would limit it 'tq land not already encumbered by a highway.
This view of the act of 1849 renders it unnecessary to consider the several objections of the plaintiff founded on a want •of compliance by the common council with its particular require auents.
We do not think that there is any force in the objection to the ■manner in which the sewer in question was laid out. When the act, under which the benefit of it was assessed in part to the plaintiff, speaks of the laying out of drain’s and sewers, it does not use that term in the peculiar and technical sense which is attached to it in the statutes relating to the laying out and construction of highways, where it has been held to embrace all that sei’ies of acts which are made necessary to the complete establishment of a highway; (Wolcott v. Pond, 19 Conn., 597;) but only intended the designation by the common counicil of the locality of the sewer or drain, and its dimensions and ¡mode of construction, and this only for the purposes of their /own action and of those they might employ in building it; and it is no more necessary, in the execution of the powers respecting it, to do any formal acts in order to validate their doings as to the owner of the highway in which it is made, than it would be in the case of any other repairs made by them upon the highway, and for such repairs previous formal action by them is clearly unnecessary to their legality.
The plaintiff further claims that the sewer in question was unlawfully built, because it appears that it was made merely for the private benefit of the persons who applied for it. There is no doubt that the common council are not authorized to construct sewers for the mere private convenience or benefit of particular individuals. The power to make them flowing from and being only incidental to that of repairing highways, [ *376 ] they, can be lawfully made only when the commodiousness of. the highway for its proper purposes, and its safety, and the healthfulness of the vicinity require them. In this case few think that it clearly appears, on a just construction *307 of the application for this sewer and the proceedings thereupon, that it was asked for and built only as a public or common sewer for the improvement of the highway. While it was wanted for this purpose, it would probably, like the most of such sewers, conduce also to the private convenience and advantage of those whose property or residence was in its vicinity ; but these consequences being only incidental to its existence, and not its principal object, constitute no legal objection to its construction by the public authorities.
We do not think that the assessment against the plaintiff for benefits to the land on the west side of Lafayette street was invalid by reason of his joint ownership with another of the land in question. The act of 1843 is so broad in regard to the power of assessing benefits from sewers, that it is very difficult to see how the exercise of'it can be revised unless it is exercised in bad faith. It authorizes the common council to “ assess the expenses of making drains and sewers laid out under its authority, or such part of said expenses as they shall deem just and reasonable, upon any person or persons who are or may be, in the opinion of the common council, in any manner benefited thereby.” The amount of the assessments, and the persons on whom they shall be imposed, are thus left entirely to the judgment of the common council, without any restriction. But if, as the plaintiff insists, we have the power of revising these assessments, and they are to be imposed only upon persons who have an interest in land in the vicinity of th.e sewer, we think that the finding on this subject is not sufficiently explicit to justify us in saying that the assessment in this case was invalid. It not only does not sufficiently appear from it, as it should, that the plaintiff had not, but it is consistent with it, and it is presumable that the common council found, that he had, by reason of his exclusive occupancy of a part of the land, such an interest in it, that he would derive from the sewer a benefit in which the other joint owner would not participate.
It is finally claimed that the construction of this sewer was unlawful, because it was so made as to discharge itself into the ^private stream of other persons without their [ *377 ] authority. It does not appear that the proprietors of that stream are so injuriously affected by such discharge that they would have a right to prevent it. If, however, it would be such a nuisance to them, we are by no means prepared to say that, while they suffer the sewer to be discharged into the stream without objection, the plaintiff can, in this action, complain of the assessment against him on that ground. But, were it competent for him to make such an objection, we think that, in the *308 absence of any evidence to the. contrary, it is to be presumed that the city had taken the requisite measures to acquire a legal right so to discharge the sewer.
Judgment is therefore advised for the defendants.
In this opinion the other judges concurred.
Judgment for defendants advised.