EDMUND M. FERGUSON AND OTHERS vs. THE BOROUGH OF STAMFORD.

New Haven and Fairfield Cos., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The charter of a borough authorized it to provide a general system of sewerage and the warden and burgesses to defray so much of the cost as the freemen of the borough should order, by assessment on property benefited, the apportionment to be made by three disinterested freeholders appointed in a certain manner. The borough established a system of sewerage, and the warden and burgesses recommended the adoption of, and the borough adopted, a resolution that $25,000 of the cost should be assessed upon property benefited. A part of this sum was, by a committee of freeholders appointed by a judge of the Superior Court, assessed upon the plaintiffs as their portion for the benefit to their property. In a suit brought by them to set aside the assessment as void and as a cloud upon their title, it was held—

1. That the warden and burgesses were not required, in fixing upon the sum of $25,000 as the amount to be assessed for benefits, to determine what particular property was benefited by the sewer, and to what extent.

2. That it was not necessary that they should first try to agree with parties benefited upon the amount of the benefits.

3. That the apportionment of the sum assessed for benefits was to be made by a committee appointed by a judge of the Superior Court.

4. That it was not a reason for declaring the assessment void that it did not clearly appear whether it was for special or general benefits. Assessments for other than special benefits having never been sustained in

this state, there might reasonably be a presumption that an assessment was for special benefits unless the contrary appeared.

5. That if this presumption was not warranted, yet the court, after the plaintiffs had had the benefit of the improvement, would not, in the exercise of its discretion as a court of equity, set the assessment aside on the ground that it did not clearly appear that it was for special benefits.

6. That in view of the uniform practice of assessing property only for special benefits, the statute authorizing the present assessment, though not limiting it in terms to special benefits, would be construed as intending only such benefits.

7. That the assessment made upon the property of the plaintiffs by the committee was not rendered invalid by the omission of an order of the court accepting it. The committee, though appointed by a judge of the Superior Court, was not an arm of the court, and no acceptance of its report by the court was necessary.

8. That the remedy of a party dissatisfied with the assessment upon his property in such a case as this, was not by a suit like the present one, but by an appeal from the assessment.

In a suit in equity evidence may be received by the court to enable it to exercise its discretion wisely, that would not have been admissible as pertinent to the issues of fact in the case.

If a statute is rendered unconstitutional by one interpretation and will reasonably bear another which will save its validity, it is ordinarily to receive the latter.

[Argued November 7th, 1890—decided April 20th, 1891.]

Suit to set aside an assessment of benefits for a city sewer as void and as a cloud upon title; brought to the Superior Court in Fairfield County and heard, upon a demurrer to sundry paragraphs of the complaint, before *J. M. Hall, J.* Demurrer sustained, and the remaining issues tried to the court before *Fenn, J.* Facts found, and judgment rendered for the defendant, and appeal by the plaintiffs. The case is fully stated in the opinion.

*E. L. Schofield* and *N. R. Hart*, with whom was *J. E. Keeler*, for the appellants.

*S. Fessenden* and *N. C. Downs*, for the appellee.

CARPENTER, J. In November, 1885, the borough of Stamford adopted a general system of sewerage for the use of the borough, and voted that $25,000 of the cost of con-

struction be defrayed by assessment upon the property of such persons as might be benefited thereby, and that the remainder of the cost, including damages and expenses, be defrayed by the issue and sale of bonds. Immediately thereafter the borough entered upon the construction of said system of sewerage, and completed it in December, 1888.

In February, 1887, the borough applied to a judge of the Superior Court for the appointment of suitable persons to ascertain and determine the apportionment of such assessment of benefits upon the property of such persons as were benefited thereby. Upon that application three persons were appointed, who made a report of their doings to the Superior Court in December, 1887. The portion of the assessment upon the property of the estate of John Ferguson, deceased, amounted to $674.36. That estate is now owned by the plaintiffs as tenants in common, and the assessment thereupon is the matter now in controversy. On the 4th of April, 1888, certificates of lien were filed in the office of the town clerk of Stamford, to secure the payment of said assessment. The object of the suit is that the assessment may be declared void, and that the cloud upon the plaintiffs' title, created by the certificates of lien, may be removed.

. The principal questions arise upon the fifth and sixth paragraphs of the first count of the complaint, which are as follows:—

" 5. The said warden and burgesses have at no time since the date of said meeting of said freemen, ascertained or determined, or attempted to ascertain or determine, whether the property of the plaintiffs hereinafter described was or would be benefited by said general system of sewerage; neither have they ascertained or determined, or attempted to ascertain or determine, to what extent, if any, said property of the plaintiffs was or would be benefited by said system of sewerage; nor have they made or attempted to make any assessment of benefits on said property of the plaintiffs to defray any part of the cost of said system of sewerage, otherwise than by the resolution set out in exhibit C; nor have they agreed or attempted to agree with the plaintiffs, or

either of them, as to the amount of benefit, if any, which said system of sewerage was or would be to the plaintiffs' said property, or any part thereof.

"6. Without said warden and burgesses having ascertained or determined, or having attempted to ascertain or determine, whether the property of the plaintiffs was or would be benefited by said system of sewerage, and without having ascertained or determined, or having attempted to ascertain or determine, to what extent, if any, said property of the plaintiffs was or would be benefited by said system of sewerage, and without having made, or having attempted to make, any assessment of benefits on said property of the plaintiffs to defray any part of the cost of said system of sewerage, and without having done any act or thing whatsoever in the matter of apportioning any assessment of benefits upon lands of the plaintiffs, and without having agreed, or having attempted to agree, with the plaintiffs or either of them as to the amount of benefit, if any, which said system of sewerage was or would be to the plaintiffs' said property or any part or portion thereof, an application was made in the name of the warden and burgesses to the Hon. Sidney B. Beardsley, a judge of the Superior Court, for the appointment of three judicious and disinterested freeholders of Fairfield County to ascertain and determine the apportionment of the assessment of twenty-five thousand dollars of the cost of said general system of sewerage, ordered and directed by the freemen of said borough upon the property of such person or persons as might be benefited thereby."

These paragraphs are demurred to as follows:—" The defendant demurs to paragraphs five and six, because the warden and burgesses of said borough of Stamford are not by law required to do any of the acts, the omission of which is complained of in said paragraphs; that the duties and requirements of said borough of Stamford, with reference to the acts, matters and subjects described and referred to in said paragraphs five and six, are wholly fixed, determined and provided for by the charter of the borough of Stamford and the amendments thereto, and that by the provisions of

said charter and amendments thereto said warden and burgesses are not required to do or attempt to do any of the acts the omission to do which is complained of in said paragraphs, and because sections three and four of said charter, and the amendments thereto approved April 5th, 1887, require and provide that the ascertainment or determination, or attempted ascertainment or determination, of whether the said property of the plaintiffs would be benefited by said system of sewerage, and the ascertainment or determination, or attempted ascertainment or determination, of the extent of such benefit to the plaintiffs' property, and the assessments of benefits on said property of the plaintiffs so far as said charter provides that such ascertainment of benefits or the extent thereof or that such assessment of benefits shall be made, the same shall be made by three judicious and disinterested persons, freeholders of said county, appointed by a judge of the Superior Court, for the purpose of enabling said warden and burgesses to defray so much of the cost of said system of sewerage as they shall order and direct to be assessed upon the property of such person or persons as may be benefited by said system of sewerage, in conformity to a direction and order of the freemen of said borough. Second. Because it does not appear that the plaintiffs have in any manner been injured by the failure of the warden and burgesses to do any of the acts, the omission to do which is complained of in said paragraphs." The demurrer was sustained. The Superior Court tried the issues of fact and rendered judgment for the defendant. The plaintiffs appealed.

The reasons of appeal are grouped under three general heads.—The first is that the court erred and mistook the law in sustaining the defendant's demurrer to paragraphs five and six of the first count, and to paragraph three of the second count of the plaintiffs' complaint, because—1. The warden and burgesses were required, before the appointment of freeholders, to ascertain and determine what property of the plaintiffs was or would be benefited by the system of sewerage. 2. To determine to what extent the

property of the plaintiffs was or would be benefited by the system of sewerage. 3. To make an assessment of benefits on the property of the plaintiffs. 4. To agree or attempt to agree with the plaintiffs as to the amount of benefits, if any, which said system of sewerage was or would be to their property.

The questions raised by these sub-divisions depend upon the construction of the charter. Prior to 1881 the power of the corporation over sewers was confined to the limits of the borough. 3 Special Laws, p. 257, sec. 7. In 1881 an act was passed amending the charter. Section first authorizes the borough to provide a general system of sewerage, and to locate one or more points of discharge in the waters of Long Island Sound; section second authorizes the issue of bonds for sewer purposes; and the third and fourth sections are as follows :—

" Sec. 3. The said warden and burgesses are hereby authorized and empowered to defray so much of the cost of said system of sewerage as the freemen of said borough shall order and direct, by assessment upon the property of such person or persons as may be benefited thereby; the apportionment of such assessments and of all benefits arising thereunder to be ascertained and determined in the same manner as is hereinafter provided for the assessment of damages.

" Sec. 4. Said warden and burgesses are hereby authorized and empowered, should it become necessary in order to carry out any system of sewerage contemplated by this act, to construct the same in any portion of said borough, in, through, over, into and along any highway, water-course, river, or public property, as they may find it expedient, and through, across or under any lands situate in said borough or outside of or beyond the corporate limits of said borough; provided that they first obtain the permission and consent thereto in writing of the owner or owners of such lands, and pay such owner or owners such sum as may be agreed upon with them as compensation for such privilege ; and if such consent cannot be obtained, then the warden and burgesses

shall be, and they are hereby, authorized and empowered to build and construct such sewers without consent; provided also, that prior to the laying or construction of any such sewer or sewers the said warden and burgesses shall have paid to the owner or owners of the land or lands over, through, across or under which said sewers are to pass, such sum of money in damages as may be fixed and determined by three judicious and disinterested persons, freeholders in Fairfield County, who shall be appointed by any judge of the Superior Court; and the persons so appointed shall, within twenty days after their appointment, give notice in writing to the warden of said borough, and to the other parties interested, of the time and place when and where they will meet to attend to the duties of their appointment, and such persons shall make due return in writing of their finding and award to the Superior Court; and any and all other claims for damages arising hereunder, other than are hereinbefore provided for, shall be heard and determined by three judicious and disinterested persons appointed as aforesaid."

Section fifth provides for an appeal. 9 Special Laws, pp. 46–7.

In 1887 the third section was amended so as to read as follows:—

"Sec. 1. The said warden and burgesses are hereby authorized and empowered to defray so much of the cost of said system of sewerage as the freemen of said borough shall order and direct, by assessment upon the property of such person or persons as may be benefited thereby; the apportionment of such assessment and of all benefits arising thereunder to be ascertained and determined by three judicious and disinterested persons, freeholders in Fairfield County, who shall be appointed by any judge of the Superior Court; and the persons so appointed shall cause a notice of the time and place when and where they will meet to attend to. the duties of their appointment, signed by them, to be published in two newspapers published in said Stamford at least three weeks successively before the time fixed in said notice for said meeting; and at the time and place men-

tioned in said notice, and at any meeting adjourned therefrom, said persons shall hear all the parties in interest who may appear and desire to be heard in relation thereto, and such persons shall make due return in writing of their finding and apportionment to the Superior Court.

"Sec. 2. The notice prescribed in section one of this amendment, whether made by persons already appointed by a judge of the Superior Court, under sections three and four of the amendment of said charter, approved March 16th, 1881, or who may be hereafter appointed under section one of this amendment, if given within sixty days after their appointment, shall be deemed sufficient and legal notice to all parties in interest." 10 Special Laws, p. 660.

Under the first general head the first three sub-divisions relate to the duty of the warden and burgesses in respect to the assessment of benefits. The plaintiffs' claim is that, before applying for the appointment of freeholders, it was their duty to designate the property of the plaintiffs which would be benefited, to determine the extent of the benefit, and to make the assessment. On the other hand the defendant claims that all the assessment which the charter requires of the warden and burgesses before the application was in fact made.

In the report which they submitted to the freemen of the borough at a meeting held November 11th, 1885, they recommended "that $25,000 of the cost of such construction be defrayed by assessments upon the property of such persons as may be benefited thereby, to be determined and ascertained in the manner provided by law." The freemen at that meeting voted as follows :—" *Resolved*, that the warden and burgesses are hereby authorized and directed to defray $25,000 of the cost of said general system of sewerage, adopted by the warden and burgesses, and approved by the freemen of the borough at this meeting, by assessment upon the property of such person or persons as may be benefited thereby; the apportionment of said assessment, and all benefits thereunder, to be ascertained and determined in the manner provided by law."

By a reference to the report of the freeholders it will be noticed that they made no assessment, in the sense in which that word is here used, but simply determined " the apportionment of the assessment .of $25,000 of the cost of the general system of sewerage adopted and provided by the warden and burgesses of the borough of Stamford, and ordered and directed by the freemen of said borough, upon the property of such persons as may be benefited thereby."

· On January 9th, 1888, the warden and burgesses adopted a resolution as follows :—

" Whereas, the persons appointed by a judge of the Superior Court, upon the application of the warden and burgesses of the borough of Stamford, have made return in writing to said court of their finding and apportionment of the assessments made to defray twenty-five thousand dollars of the cost of the system of sewerage, heretofore adopted by said warden and burgesses—*Resolved*, that such assessments, for defraying said sum, be made upon the property of the persons benefited, in accordance with the findings and apportionment herein referred to, and that the clerk be directed to cause to be published a. notice signed by the warden or clerk of said borough, containing the names of the persons thus assessed, with the amount of their respective assessments, in each of the newspapers published in said Stamford, for two weeks successively."

Thus it clearly appears that the warden and burgesses in fact made the assessment of $25,000 in gross, upon all the property benefited.   They did not themselves apportion that sum among the owners of the property, but they caused it to be done in exact conformity with the directions of the charter—" the apportionment of such assessment to be ascertained and determined by three judicious and disinterested persons," etc.

We do not think that the act of 1881, as amended by the act of 1887, under which the general system of sewerage was constructed, required the warden and burgesses to determine what property of the plaintiffs was benefited thereby, and to what extent, and to make the assessment

thereon, otherwise than they did by the proceedings above referred to.

The fourth subdivision under this head presents the question whether it was necessary for the warden and burgesses, before applying for the appointment of freeholders, to make an effort to agree with each land owner upon the amount of benefit which he should pay.

The charter of 1854 required the warden and burgesses to make the assessment of benefits and the apportionment thereof, but there was no provision requiring them to agree, or to try to agree, with each land owner benefited, before making such assessment and apportionment.    3 Special Laws, p. 257, sec. 9.    If we turn to the acts of 1881 and 1887 we shall see that there is no such requirement in them; certainly none in express terms.    In the charter of 1882 there is such a requirement; but that act does not apply to the general system of sewerage now under consideration.    It expressly provides " that nothing herein shall be taken in any wise to repeal the act of 1881."    The latter act relates solely to a general system of sewerage, and it was clearly the intention of the legislature that such system should be constructed under it, as it might be amended from time to time, and that the general charter of 1882 should not affect it.

The act of 1881 required the freeholders to be appointed by a judge of the Superior Court; the act of 1882 required them to be appointed by the warden, or, in certain cases, by the senior burgess.    The subject matter being different, under the saving clause above referred to, there is no conflict, and both provisions may well stand together.    So too in respect to trying to agree upon the amount of benefits; the act of 1882 requires it, the act of 1881 does not.

It seems to be claimed that the clause of section three of the act of 1881—" the apportionment of such assessments. and of all benefits arising thereunder to be ascertained and determined in the same manner as is hereinafter provided for the assessment of damages," carries with it the same obligation to try to agree upon the amount of benefits to be

paid that is subsequently required in respect to damages. Such is not the express provision of the act, and no such inference can fairly be drawn from it. Damages and benefits are essentially different. Damage in each particular case stands by itself. That which one sustains is unaffected by that sustained by another, and there are as many cases as there are land owners. On the other hand, in this case a fixed sum is assessed upon all who are benefited, to be apportioned among them; there being but one case, to which each land owner is necessarily a party, and to some extent his interest is antagonistic to all the others. What he gains the others lose, and *vice versa*. If some are agreed with and others are not, freeholders are appointed to apportion among those who have not agreed. How are they to proceed? Are they to apportion the amount not provided for by the agreements among those not agreed? That might result in gross inequality. The terms of the statute manifestly do not contemplate such a state of things. Moreover, the parties to the several agreements and the freeholders might differ materially as to the proportion which the several landholders should pay. The result might be confusion and serious embarrassment. It may be said, and perhaps with truth, that the same consequences might result in a case arising under the charter of 1882. But we are not now construing that charter, and we have no knowledge as to the circumstances that may attend such a case. It is enough for our present purpose that the acts applying to the case before us clearly contemplate that the apportionment of the sum assessed, $25,000, among all the parties benefited, shall be made by the freeholders appointed by a judge of the Superior Court.

Under the fifth subdivision it is claimed that the act of 1887 is not retroactive, and does not apply to proceedings before them begun under the act of 1881. Perhaps we do not fully apprehend the force of this claim. The later act in terms purports to be an amendment of the prior. It takes away no right or privilege granted by the former, and is not at all inconsistent with it. It is remedial in its nature.

The first section prescribes the notice to be given by the freeholders appointed by a judge of the Superior Court; and the second provides that such notice, whether given by persons theretofore or thereafter appointed, if given within sixty days after their appointment, shall be legal notice, etc. It is too clear to require argument that the legislature intended that the act of 1887 should affect the act of 1881, and should apply to pending proceedings. In this we see nothing objectionable, as no rights are injuriously affected thereby. The construction of the act of 1881, if at all doubtful, is affected by the act of 1887, rather than by the charter of 1854.

The defendant demurs to the third paragraph of the second count. That paragraph is as follows:—"Said claimed assessments were made on large areas of land in no wise or sense specially benefited by said system of sewerage, and on lands owned, occupied and used by the borough of Stamford, one parcel thereof being a part of said sewerage system, and on public squares and parks belonging to said borough, and on lands not abutting upon any highway in said borough in which said sewer is constructed, and said pretended assessment was by said Hoyt, Baker and Ferris apportioned upon lands of the plaintiffs and others, without regard or reference to the value of said land, with or without improvements, but solely with regard to area; and by it large amounts were apportioned upon lands, including land of the plaintiffs, receiving little or no special benefit; and smaller amounts on lands receiving larger benefits; and unequal amounts on lands lying side by side and similarly situated and equally benefited; and said apportionment was not made uniform and proportional to the special benefits accruing to the several pieces of property respectively charged thereby."

The demurrer is as follows:—"1st. The defendant demurs to paragraph three of the second count of the plaintiffs' complaint, upon the ground that it does not appear that the plaintiffs were in any manner injured by the assessment of benefits made in the manner therein described. 2d. Because the remedy of the plaintiffs for such acts and for any injury

sustained by them thereby was and is by an appeal from such assessment, in accordance with the provisions of the charter of said borough of Stamford.    3d. Because from said acts the plaintiffs are not entitled in equity to the relief asked for in this complaint."

With regard to the first ground of demurrer.    It is conceded that this paragraph does not allege injury in terms. The plaintiffs claim however that that is not necessary if it appears from the whole case that they have actually sustained injury.    It will be noticed that the judgment which the plaintiffs claim is that the whole assessment may be declared void.    Now it may be that if the assessment is void the law will imply injury.    But it is not claimed that the assessment is void by reason of the facts alleged in this paragraph.    If void for reasons alleged in other parts of the complaint then the plaintiffs have no use for this paragraph. If not void, then the implication of injury which the plaintiffs resort to fails.    So that if the sufficiency of this paragraph depends upon the existence of injury, it will be difficult to sustain it.

The second ground of demurrer, that the plaintiffs' remedy, if any, is by an appeal, is well taken.    It may be that if the facts suggested had been clearly and distinctly stated they would have shown a good reason for a re-assessment.    But that, as the plaintiffs say, is not the remedy they want; they claim that the whole assessment is void and should be set aside.    We are of the opinion that the paragraph does not show good reasons for that; consequently the demurrer, on the third ground, was properly sustained.

Under the second general head of the reasons of appeal, the plaintiffs say that the court erred because the amendments, (acts of 1881 and 1887) " do not limit the assessment thereby authorized to special benefits " and that " it does not appear that the claimed assessment against the plaintiffs' property was made for and limited to special benefits accruing thereto."    In this they follow substantially the averments in paragraph two of the second count.    The answer admits that " it does not appear that said proceedings

were taken for the purposes of an assessment for special benefits, or that the assessment made upon the plaintiffs' property was for special benefits accruing thereto, otherwise than is set forth in said resolutions, application and return referred to in said paragraph." The finding of the court is substantially in the same language.

Conceding that the record leaves it in doubt whether the assessment was for special or general benefits, is that a sufficient reason for declaring the assessment void?

The borough regarded a system of sewerages, what it was in fact, an improvement essential to the health and comfort of the community. For more than a quarter of a century such improvements have been paid for, in part, by an assessment of benefits upon those who are specially benefited. It is the usual method in such cases of exercising the power of taxation. Assessments for other than special benefits have never been sustained in this state. Is there, or is there not, some presumption that this is an ordinary case of special benefits until the contrary appears? Should it not be shown affirmatively that the assessment is in fact illegal before the court can set it aside?

Again. The improvement has been completed. All the community is enjoying its advantages. All the real estate in the borough, including that of the plaintiffs, has been enhanced in value thereby. The borough has become obligated to pay therefor the sum of $100,000, individuals have been assessed for $25,000 more, and of that amount the sum of $22,000 has been paid; of the unpaid balance over $600 is assessed upon the plaintiffs. They, while enjoying the advantages of the improvement, without showing that the assessment against them is unjust, call upon the court to interfere in their behalf and excuse them from paying their just and reasonable proportion of the cost. Is that a case which commends itself to the favorable consideration of the court? Will it be a wise exercise of the discretion of the court, upon the mere suspicion of an improbable possibility, to declare this assessment void and thereby throw this com-

munity into the confusion and embarrassment which must surely follow?

But are we not conceding too much? May not the statute be fairly interpreted as meaning only special or direct benefits? The word "benefits," when used unqualifiedly, is a comprehensive term, including direct or special benefits, and indirect or general. But when the connection in which it is used, and the subject matter to which it is applied, are such as to indicate that it is used in a limited or qualified sense, it is the duty of the court to give it that interpretation. It is used here in the charter of the borough. In the ninth section of the charter of 1854 it is qualified by the use of the adverb "specially." In the act of 1881 the adverb is dropped. But it is apparent that it is used in the same sense, and signifies special and direct benefits. This will appear more clearly perhaps from a consideration of the subject matter. It is used with reference to an improvement undertaken by the community for the general benefit of the 'community, but it results in a direct benefit to those who have immediate access to the sewer—a benefit in which those more remotely connected with it do not participate. Now for many years it has been the practice to assess as a betterment upon the property of persons so directly benefited, a portion of the expense. But these assessments have their limitations. Betterments may not be assessed upon those who are only benefited as members of the community at large ; they may not be assessed to an amount greater than the amount of benefits conferred ; and, like all other taxation, they should be apportioned, as far as possible, equitably among all who are in like manner interested. Now when the legislature authorized this borough to make this assessment, it will be presumed that it contemplated only assessments under the conditions, limitations and qualifications above referred to. The decisions of this court clearly justify this view. In *Cone* v. *City of Hartford*, 28 Conn., 363, the statute authorized an assessment for a sewer on persons "in any manner benefited thereby." As eminent a lawyer as the late Mr. Hungerford, while objecting

to the validity of the assessment on other grounds, made no claim that it was void because it was not limited to special benefits in terms.   The assessment was sustained.   In *Dann* v. *Woodruff*, 51 Conn., 203, we held that the words "specially benefited" were not used in any technical sense, and that it is not necessary to allege the fact in those words, but that it may be inferred from the facts which do appear.   So too, if it is apparent that the word "benefits" is used in a statute in the sense of "special benefits," the statute will be so interpreted and enforced.   A statute which will admit of two interpretations, one just and valid, the other unjust and invalid, will ordinarily receive the former.   It is no part of the duty of the court to be astute in order to invalidate a statute; it will rather strive to so interpret it as to sustain its validity, and give effect to the intention of the legislature.   We must therefore reject in this case the rule so strenuously urged, that if what may be done under one interpretation is unconstitutional, the statute is void altogether, although susceptible of an innocent interpretation. The views expressed above are perhaps a sufficient answer to the constitutional objection.

Another objection is that the assessment made by the committee is without force for the reason that the Superior Court "passed no order, judgment or decree relating to or accepting the same."   No such order was requisite.   The charter, neither in terms nor by implication, requires it.   It will be observed that the proceeding is not in the Superior Court. The committee, although appointed by a judge of that court, is not an arm of the court, and the validity of its proceedings in nowise depends upon any action accepting or approving its doings.   The legislature doubtless could have provided for such action, and could have further provided that each person interested in the assessment might appear and be heard relative to the same ; might have provided in short that in that way each person might have his or her day in court.   But it has not done so.   On the contrary it has provided that each party might have an appeal from the assessment, not by way of remonstrance, but by an application for

a re-assessment. There can be no presumption that the legislature intended a remedy by remonstrance and also by appeal. The law contents itself by giving each party a day, not several, in court.

Of course if the assessment is invalid, or if the plaintiffs have been deprived of any constitutional right, then the fact that a large majority of the parties in interest have paid their assessment is no answer to the plaintiffs' case. On the other hand, if the assessment is valid, as we think it is, and the plaintiffs have been deprived of no constitutional right, as we think they have not, then the admission of that fact in evidence can have done the plaintiffs no harm.

Moreover, this is an equitable action. Whether the relief prayed for will be granted is to a considerable extent at the discretion of the court. If the evidence was offered and received, as we may presume it was, merely for the purpose of aiding the court to exercise its discretion wisely, we see no objection to its admissibility.

We find no error in the judgment.

In this opinion the other judges concurred.