J. G. SHREVES, *as Probate Judge, etc., et al.* v. O. S. GIBSON *et ux.*

No. 15,571. (92 Pac. 584.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Delegation of Powers—County Drainage Act.* The provision of the county drainage act (Gen. Stat. 1901, §§ 2551-2566) which allows an appeal from the order of the county commissioners requiring a drain to be constructed by the landowners benefited, in consequence of which appeal the final determination of the amount of labor to be performed by each person interested—in effect the estimate of benefits as a basis for special assessments—is submitted to a jury selected by the probate judge, is not void as an attempt to devolve legislative functions upon a judicial tribunal.

2. —— *Appeal Is in Effect to a Commission Appointed by the Court.* Although the proceeding referred to is described in the statute as an appeal to the probate court, and is there spoken of as a "case," and although the judge is required to make a record of the proceedings of the jury and to make an order in accordance with their report, nevertheless such proceeding is in effect an appeal to a commission to be appointed by the probate judge, and not to the court itself, inasmuch as the court is given no control over the jury's investigation or decision.

3. APPEAL BOND—*Amount—Validity.* Where the statute relating to an appeal bond is silent as to its amount such a bond is not void because the liability thereon is limited to a fixed sum.

4. NOTICE—*Appeal in Drainage Proceedings.* Under a statute requiring a written notice of appeal to be given to the county clerk, a notice, otherwise sufficient, which is delivered to the clerk is not rendered void by the fact that it is addressed to the commissioners.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed November 9, 1907. Reversed.

*C. T. Atkinson, C. R. Pollard,* and *L. C. Brown,* for plaintiffs in error.

*L. H. Webb, O. P. Fuller; J. Mack Love,* and *C. Ward Wright,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: Proceedings were begun under the county drainage act (Gen. Stat. 1901, §§ 2551-2566) for the establishment of a drain. The county commissioners, upon the petition of persons interested, finding that the proposed ditch was necessary and would be conducive to the public health, convenience and welfare, ordered it to be built, apportioning the construction among the owners of the lands affected in proportion to their estimate of the benefits to be received. Two of these landowners, being dissatisfied with the order, gave the bond and notice of appeal provided by the act. (Gen. Stat. 1901, § 2557.) According to the terms of the statute (Gen. Stat. 1901, §§ 2558, 2559), the effect of this was to require three questions relating to the proceedings to be submitted to a jury to be impaneled by the probate judge, namely:

"*First*, whether it will be conducive to the public health, convenience or welfare to cause said proposed ditch, drain, or watercourse to be established as located; *second*, the amount of compensation due to each person in case of the location of the same; and, *third*, the amount of labor to be performed by such person interested in the opening and constructing of the same."

A transcript of the proceedings before the county board was filed with the probate judge, but before any steps were taken by him persons interested in the projected improvement appeared and contested his right to take jurisdiction of the matter, upon the ground that that part of the statute relating to the appeal was void as an attempt to devolve legislative functions upon a judicial tribunal. A motion to dismiss the appeal being denied, the moving parties applied to the district court and obtained a writ of prohibition against the probate judge forbidding him to proceed further in the matter of such appeal. The probate judge and the persons

who instituted the appeal prosecute error from the judgment awarding such writ.

There is little difficulty in deciding that it is competent for the legislature to provide for submitting to the determination of a court the first two of the three questions which the statute says may be referred to a jury. It is true that the question whether a proposed improvement would be of public benefit is very closely related to the question whether it shall be undertaken, but adherence to the doctrine established by the series of cases relating to the extension of city boundaries requires the court to recognize a distinction between them, and to say that the former question is one of fact suitable to be left to a court, only the latter being one of policy requiring to be decided by a legislative body. These cases are collected and reviewed in *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384. (See, also, *Citizens' Sav. Bank v. Town of Greenburgh,* 173 N. Y. 215, 65 N. E. 978, and cases there cited.)

The amount of compensation to be made to individuals on account of the establishment of the drain is conceded to be a fair matter for judicial review.

The serious controversy arises with respect to the third question. While the statute seems to contemplate the actual building of specified portions of the ditch by the several landowners, the situation is essentially the same as though the cost of the improvement were to be assessed against the improved property in proportion to the benefits received. May the legislature authorize an appeal to be taken to a court from the assessment made by appraisers in such a case? The defendants in error rely with confidence upon the doctrine of *Auditor of State v. A. T. & S. F. Railroad Co.,* 6 Kan. 500, 7 Am. Rep. 575, which has been reaffirmed at the present session of this court in *Silven v. Osage County, ante,* p. 687, declaring void a statute which purports to grant an appeal to the district court from the action of the county board of equalization. It must

be conceded that the analogy between those cases and this seems close, and that the grounds of distinction are not readily apparent. However, although taxation by special assessment, like general taxation, is regarded as an exercise of legislative power, it differs from it in various ways. (*Hines and others v. The City of Leavenworth and others*, 3 Kan. 186.) The argument against permitting the judgment of a court to be substituted for that of administrative officers with respect to the entire system of assessment upon which all public revenues depend does not apply with equal force to a plan which merely contemplates submitting to a judicial body the question of how far a specific tract of land is benefited by a particular improvement—a question which may plausibly be viewed as one of fact. The practice of allowing appeals to judicial tribunals from determinations of this character is common. (2 Cooley, Tax., 3d ed., 1271; 25 A. & E. Encycl. of L. 1220.) And it has often been held that the existence of such right of review dispenses with the necessity of giving notice to the owner of the property affected prior to the original assessment. (1 Cooley, Tax., 3d ed., 59, note 4; *The State ex rel. Baltzell v. Stewart*, 74 Wis. 620, 43 N. W. 947, 6 L. R. A. 394; *Wilson v. Karle*, 42 N. J. Law, 612; *Hoertz v. Jefferson Southern Pond Draining Co.* [Ky.], 84 S. W. 1141.) Where, as in this case, a legislative body decides whether an improvement shall be made, what its extent shall be, what property shall be charged with its cost, and what method of apportionment shall be employed, it is not clear that the mere ascertainment of the actual results of such rule may not be committed to a court. Where the legislature adopts a rule of apportionment by frontage or area its application becomes a mere matter of measurement, but even this requires some inquiry and finding. It is not clear why, having chosen to let the apportionment turn upon the actual benefits received, the legislature may not suffer the fact in that regard to be determined in a judicial proceeding. That a right

of limited judicial review from the appraisers' estimate of benefits may be granted does not admit of doubt. Thus, in *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279, it was said:

"The city, and not the court, is authorized to take the initiative in the matter of such improvements and the assessments to pay therefor. It was the legislative power of the city, exercised by its council, that occasioned the imposition of the assessment. The state legislature gave the city the authority to levy such a tax. It provided the method by which it should be done. By this plan the apportionment of the tax to the various parcels of property is made by a board of commissioners appointed by the court. These commissioners, by operation of law, become, in effect, officials or agents of the municipality for the performance of this service. Upon the completion of the commissioners' work it may be called in question by any interested person before the court, which is vested with revisory powers. The function of the court in these proceedings is to settle disputes and to correct errors and inequalities called to its attention, and thereby relieve the assessment of any lack of uniformity or other injustice. That the act of the legislature invokes the assistance of the court to obviate errors in, and facilitate the accomplishment of, a special assessment, does not, in our opinion, render the statute obnoxious to the constitution." (Page 148.)

In *State v. District Court of Hennepin County,* 33 Minn. 235, 22 N. W. 625, the distinction between setting aside the work of an assessing body and merely revising it was discussed, the court saying:

"It was not the purpose of the act that the proceeding before the court should be a reassessment *de novo.* . . . We do not think it reasonable to construe the act as contemplating the setting aside of the determination thus made as to any objector, and, as a matter of course, allowing the trial of the same question as to benefits anew before the court, and making the opinion of the judge as to the facts to prevail over that of three assessors who had been selected to perform this very duty. The terms of the act do not require such a construction. While the court is empowered to '*make or order a new assessment,*' in whole or in part, any

such new assessment the court is to 'revise and confirm upon like notice.' It was not intended that the court should itself make an assessment upon a complete trial before it, and then 'revise and confirm' its own judgment: The term 'make' seems to have been used either in the sense of 'order to be made,' or else as referring to such corrected or amended assessment as should result from the exercise of the power of the court to 'revise, correct, amend:' any modification of the original assessment being, in some sense, the making of a new or different assessment." (Pages 249, 250.)

But in *State ex rel. v. Ensign*, 55 Minn. 278, 56 N. W. 1006, arising under a similar statute, the same court said:

"Whether a local improvement shall be made, and whether the cost shall be borne by the entire city or by the property specially benefited, is a question in its nature political, and in no sense judicial, just as is the question whether private property shall be taken for public use. But the legislature may commit to the courts, as a *quasi*-judicial function, the power to determine what is just compensation for taking private property for public use, and, when the burden of a local improvement is imposed upon particular property, (as upon property specially benefited,) we think it may be committed to the court to determine as a *quasi*-judicial question whether the assessing officers have correctly determined the facts upon which the assessment is made." (Page 285.)

It is not necessary, however, to decide the precise question stated. Heretofore in this discussion it has been assumed that the statute permits and requires that upon an appeal being taken from the board of county commissioners the probate court shall apportion the benefits of the proposed improvement. Whether that is really the case can only be determined from an examination of its essential provisions. It describes the proceeding as an appeal "to the probate court," but upon the filing of the bond and notice this is what is actually done: The probate judge impanels a "jury" of six disinterested freeholders, and gives the sheriff a notice of their appointment, specifying a time

for their "meeting . . . in probate court"; the appellant notifies the persons interested of this date; at the time specified the probate judge hears and determines "all preliminary questions pertaining to such case," and administers an oath to the jury to report in writing to the court, upon actual view, the three matters already stated; upon the return of the jury the judge makes a record of their proceedings, makes an order "as said jury shall ·report," and taxes the costs in fair proportion among the persons interested "in conformity with the report of said jury." It will be observed that while the proceeding is spoken of as a "case" it is utterly lacking in the essential elements of a trial by the court. The judge is given no control over the deliberations of the jury, and their action is final. He does, indeed, go through the form of making an order, but it is a mere registration of their decision. It was said of a similar situation, in *Ferguson v. Borough of Stamford,* 60 Conn. 432, 22 Atl. 782:

"It will be observed that the proceeding is not in the superior court. The committee, although appointed by a judge of that court, is not an arm of the court, and the validity of its proceedings in nowise depends upon any action accepting or approving its doings." (Page 447.)

There is a provision for costs under some circumstances being taxed to the appellant and "collected as judgment at law in other cases" (Gen. Stat. 1901, § 2560), but this is only an incidental feature of the ·act and can be rejected if invalid without affecting the remainder. In substance, therefore, this proceeding is nothing more than the appointment by the probate court of commissioners to estimate the benefits that would result to the several tracts of land affected from the proposed improvement. That the power is described as conferred upon the probate court is not conclusive or even important. As was said in *In re Johnson,* 12 Kan. 102:

"The legislature in enacting said sections uses the

words 'probate courts,' instead of using some other designation for the persons intended. But the language must be liberally construed, so as to carry out the will of the legislature, and not to defeat it. The legislature undoubtedly intended to confer said jurisdiction upon the persons who exercise the jurisdiction of the probate courts, and not upon the courts themselves *as* probate courts." (Page 105.)

The use of the word "jury" is likewise immaterial, however inappropriate the term may be. This is intimated in *Bauman v. Ross,* 167 U. S. 548, 17 Sup. Ct. 983, 42 L. Ed. 270, where it was said:

"Some confusion has perhaps arisen from designating the tribunal of seven men, which is to estimate the damages and to assess the benefits, as 'a jury,' when it is in truth an inquest or commission, appointed by the court." (Page 592.)

That other than judicial powers may be conferred upon the person holding the office of probate judge has been held in many cases, among which may be mentioned *Intoxicating-liquor Cases,* 25 Kan. 751, 37 Am. Rep. 284, and *The State, ex rel., v. Brown, Probate Judge,* 35 Kan. 167, 10 Pac. 594. That the appraisers of benefits are selected by the incumbent of a judicial office is no ground of objection. (See editorial note in 3 Current Law, 743; 25 A. & E. Encycl. of L. 1220, note 7, and cases cited in *Bauman v. Ross,* 167 U. S. 548, at pages 590, 593, 17 Sup. Ct. 966, 42 L. Ed. 270.)

A case quite closely in point is *Lake et al. v. City of Decatur,* 91 Ill. 596, the scope of which is indicated by the following extract from the opinion:

"It is, doubtless, true, under the section of the constitution cited the legislature cannot confer the power on the county court to make local improvements by special assessment. That power, if conferred, must be vested in the corporate authorities of the city or town. We do not, however, understand that the act in question has conferred, or even attempted to confer, the power on the county court, or that the county court has exercised such power in the proceedings in the case before us. . . . The city council of Decatur passed an

ordinance that the improvement should be made—that it should be paid for, in part, by special assessments. The cost of the improvement was estimated, and the character and quality of the work was settled, by the corporate authorities of the city. Upon these matters the county court was not consulted, nor did it have any connection whatever with them. But when, during the progress of the proceedings, it became necessary to have commissioners appointed to assess benefits on the property which would be specially benefited by the improvement, a petition was presented to the county court for the appointment of commissioners, as is provided for in the act. The county court, as will appear by reference to the several provisions of the act, has no voice in determining whether the improvement shall be made, what its character and cost shall be, when it shall be commenced, and when stopped. Indeed, in so far as the making of the improvement by special assessment is concerned, the county court is an utter stranger to the proceeding, and has no voice in it. These various matters are conferred upon the corporate authorities of the city or town. How can the language of the constitution, 'may vest the corporate authorities of cities, towns or villages with power to make local improvements by special assessment,' be held to prohibit the appointment by a court of commissioners, during the progress of the proceedings, to assess benefits to the property owner who is to be specially benefited by the improvement, when the legislature has conferred such a power upon the court? The legislature has provided that the city, during the progress of the proceedings, may apply to the county court for the appointment of commissioners, and that they may be appointed; and as the constitution does not prohibit the general assembly from so providing, it clearly has that power." (Page 597.)

The court is of the opinion that the statute under consideration does not attempt to impose upon the probate court, as such, the duty of determining the amount of assessment proper to be charged against the benefited property to pay for the projected improvement, and for that reason, if for no other, is not open to the objection urged against it.

Two minor questions are raised. The statute re-

lating to the bond to be given upon appeal fixes no amount. The bond given by the appellants in this case was for the sum of $300, and it is argued that this limitation rendered it void. The bond is required to be made "to the acceptance" of the county clerk and probate judge, and it would seem proper for them to pass upon its sufficiency as to amount as well·as with respect to the security. At all events the bond given was not a nullity. (See *Ottawa v. Johnson,* 73 Kan. 165, 84 Pac. 749, and cases there cited.)

The notice of appeal is required to be given to the county clerk. In this instance the written notice was delivered to the county clerk, but was addressed to the board of county commissioners, and it is claimed that this thing was not a sufficient compliance with the statute to give the probate judge jurisdiction to act. The court thinks otherwise.

The judgment of the district court is therefore reversed.