*54
 
 Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Much discussion of the evidence i^u the case will be unnecessary, as the principal facts are embodied in an agreed-statement, which is made a part of the record.
 

 By the agreed statement it appears that the plaintiff company is a corporation established by the laws of the State, and that the other plaintiff claims to be the legal owner of all the property lately owned by ¿he corporation. Said company was. incorporated on the third of March, .1851,'with a capital stock of six millions of dollars divided into shares of one hundred-dollars each.
 

 Pecuniary aid iji large-amounts was furnished to the company by .the State, as' appears from several legislative acts. Such aid was granted by the act of the twentydhird of December, 1851, in terms as follows: that when evidence is produced satisfactory to the governor that the- c’ompany has collected fifty thousand dollars on their capital stock, and that they have expended the same in the survey, location, and construction of the railroad, the governor shall cause to be issued and delivered to the company special bonds of the State to the same amount, as a loan of public credit, bearing interest and payable as therein provided.. Provision is also made in the same section that upon like proof that the company have expended the whole of the sum realized from those bonds, and that they have also expended a further sum Qf the same amount of their own .moneys, that the governor, shall in like manner cause to ’be issued’ and delivered to the company further like bonds for the same amount, and so on in like manner'as often as tbe company shall, from time to. time, furnish like evidence "that they have expended from their-own moneys further sums, of not less than fifty thousand dollars, for the construction of the iailrpad, and that: •they have expended for the purpbse the whole, of the proceeds of the bonds previously issued by the State, the gov-. ernor shall cause to be issued and delivered to 'the company further'like bonds in instalments of the' same amount, not exceeding-in all the sum of two millions of -dollars.
 

 , Bonds of the kind were forbidden to be delivered until
 
 *55
 
 the acceptance thereof.should-be signified'to the secretary' of state by the filing in his office of a certificate of such acceptance undfr the corporate seal of the, company with the signature of the president, and the provision was that' the certificate of acceptance so executed and filed should be. recorded in'the office of the secretary of state, and that it" shall become and be, according to all intents and purposes, , a mortgage of said road and every part and section thereof,, and. its appurtenances, to the people of the State,'for secuiv iiig the payment of the principal and interest ..bf the .sums, of' money for which' such bonds shall frpm time -to tinie be - issued and accepted.
 

 Legislative aid was also furnished in like form to' certain! . other railroad companies of thé Sta.te to expedite their con-' struetion and the completion of the same, amounting in the whole to the sum of.nine millions of dollars, including the amount furnished to the plaintiff company,.'all of which was secured as' a first lien on the -respective railroads in like manner.
 

 None of the companies, however, were able to complete-their railroads without further aid from the State, and on the tenth of December, 1855, the legislature, by an apt entitled “An act to secure the completion of certain railroads in the State,” enacted that it shall be the. duty of the governor, upon the application of any of said companies, with the proof of the investment of any sum in the actual com struetion and equipment of the trunk line of the railroad, from sources other than the proceeds of'the bonds of the State, and not secured upon the road by a lieu prior-to that of the State, and verified as therein required, to sign and deliver to s.uch.company an amount-in the bonds of the State equal to twice the-amounCso proven to have been invested in the construction and equipment of the said railroad since the last application and issue, of bonds to such company, and successively from time to time, "uppñ' the application for bonds and proof of such investment, the,governor shall issue and deliver, in like manner, bonds, to. such company-until the aggregate amount to the.plaintiff company shall be
 
 *56
 
 two millions of'dollars, 0113 million, of which shall be exclusively applied to.the'construction of a portion of said road therein described.; and it is made the duty of the governor •to expend the other million'of dollars for the purchase of the railroad iron necessary'to lay the track of said road, from one described point to another, and to purchase the rolling stock for the same, and the provision is that the said iron and rolling stock so purchased shall belong to the State' until placed upon the track for use, after which time the State shall have a first.lien on said iron and rolling stock, together with all the road and its equipments, constructed and to be constructed, for the security of the payment of the principal and interest of said bonds, and all bonds issued or that may be issued to said company under this or any former act of the legislature granting the credit of the State to the company.
 

 Power is also reserved to the State to euforce the lieu on the railro'ad for the failure on its part to pay punctually principal and interest on the bonds issued for its benefit, as herein and heretofore provided for in such cases; and the company .shall pay qt the times herein specified, “to the treasurer of the State one apd a quarter per cent., in a.ddition, in each year, on each thirty-year bon'd, and two and a half per cent, .in each year on each twenty-year bond sti sold or hypothecated, to be invested at not less than seven per jeept. interest,-in hucll securities as ar.e provided in the act.”
 

 By the same section it is, also provided, that from the net profits arising from the road after the sainé shall be completed and in operation, a sum equal .to not less than ten per cent.;'per.annum upon the net earnings'of. the railroad shall be .paid by the company to the treasurer'of the-State as.a' sinking, fund, for the purpose of,paying at maturity the. bonds of. the State so issued and. to be issued to the company. ‘
 

 Special -provision is also made that the treasurer of the, company and the treasurer of the State shall be the commissioners of the sinking fund', and that-it shall be the duty of ;th*e cómpány to' pay or remit the. semi-yearly, interest'to the designated place; as . therein provided, and'ip case the
 
 *57
 
 company shall fail to pay such interest or to remit the amount to the designated place, it is made the duty- of the treasurer of the State to supply the amount and remit the same; in .which event he is required to refund the amount from the •sinking fund and charge the same to’ the defaulting company. In that event the provision is that the defaulting ompany shall not draw any further State' bonds. Moneys, funds, and 'securities belonging to the sinking fund are declared to be subject to the control, care, a,nd management of the fund commissioners, and the provision is that,from time to time they may invest the same in the"bonds of the State under the conditions therein provided.
 

 All fuuds derived from the sale of State bonds were expended, but still the railroad was not completed, and on the third of March, 1857, the legislature made a further loan of credit to the company of one and a half millions of dollars, .to be issued in bonds and to be expended upon the railroad south of the junction therein described, which bonds were to be issued in instalments of two hundred thousand dollars, upon proof furnished to the governor of the expenditure for the same purpose of a sum equal to their par value in the construction of the railroad, and the company was. authorized by the same act to establish and keep a ferry across the Missouri Biver,- where its road strikes the same, for all purposes connected with the company, and for general purposes, by paying the usual license-tax provided by law. in such cases.
 

 Bonds could not be lawfully issued under that act until the company accepted the act, and it was provided that the failure to pay any part of the principal, or interest of the bonds should be a.forfeiture of all right in such.,company to demand or receive any further issue of bonds, and in that event it was made the duty of the governor to foreclose the mortgage of the State and to enforce her lien on the property. of the' company..
 

 Before the year expired, to wit, on the nineteenth of November following, the legislature authorized Rie.governor to. issue to the plaintiff company a further amount of two hun
 
 *58
 
 dred and fifty thousáud dollars in the bonds of the State, to complete a described portiou of the road, and the same act provided that the act should not be construed to release the railroad from any penalty or forfeiture to which the company may be liable under such prior laws.
 

 Authority was conferred upon the-company by the act of the sixteenth of February, 1865, to issue their own bonds to. the amount of six millions of dollars, and to secure the same by a first mortgage of their railroad and appurtenances, as more fully set forth in the act. Such bonds were to be issued in three classes and were-to’be applied as therein provided, and to facilitate the sale of the bonds the State relinquished her first lien and mortgage upon the main line of the railroad, retaining
 
 '•v.ly
 
 a second lien and mortgage thereon until the principal and interest of said bonds áre paid in full. By the same act the legislature created a fund commissioner, and enacted that whenever any portion of said bonds shall be issued that they shall be placed"in the hands of the fund commissioner to be negotiated, and the proceeds paid over to the corporation for the purposes and under the regulations and^ restrictions provided in the same act,.but- the act was not to be operative unless accepted by the company in the mode therein provided. Prior inconsistent provisions iu.relatiou to the plaintiff company were repealed by the twelfth section of the act, and the provision is that the work on the west branch should-not be expedited to the exclusion of -the construction of the main line of the railroad.
 

 Those several,acts were duly accepted by the company and were in force on the eighth of April following. Interest was paid by the company on the bonds issued,until the year 1860, when the company made default, and such .interest has never been paid. . On the said eighth of April the people of the State adopted an ordinance as a part of their constitution, which provides to the effect that au annual tax of ten per centum of all their gross receipts, with an immaterial exception,-shall be levied and collected of the company and two other companies therein named, for the
 
 *59
 
 period of two years,vas therein described, and fifteen per centum thereafter, which tax shall be assessed and collected -in the county of St. Louis in the same manner as other State •taxes are assessed and collected, and shall be appropriated b}' the legislature to the payment of the principal and interest now due or hereafter to become due upon the bonds of •the State issued to the company.
 

 Such receipts for the transportation of freight and passengers for the first of the two years, not including any sum received from the excepted source, amounted to six hundred and eighty-two thousand five hundred and seventy dollars, and'the agreed statement shows that a tax of ten per cent., amounting to sixty-eight thousand two hundred and fifty-seven dollars, was assessed in the proper county on the grosp' receipts of the railroad for that year, under the provisions-of the said ordinance. None'of the principal of the bonds was due at the time the tax was assessed,.but the interest on the same, to an amount greater than the amount of the tax, was due at that time.
 

 Payment of.the tax being refused the defendant, as the collector, seized the property of the company to satisfy the', same, and the plaintiffs here brought an action of trespass against the collector to test the validity of the tax, in the' State Circuit Court for the county ¡where'the tax was as-sessed. Service- was made and the defendant appeared, when.the parties waived a jury and submitted the case to the court upon ¿u agreed statement of facts. Hearing was had and the court rendered judgment for the plaintiffs and th'é defendant expepted and appealed to the Supreme Court Ofthe State, where the judgment of the State Circuit Court was reversed and a judgment rendered for the defendant. Whereupon' the plaintiffs sued out' a writ of error and removed the cause into this court.
 

 Corporate powers were conferred upon the company by the act of the third .Of Marph, 185Í, but the act of incorporation coutainsino provision whatever exempting the property of thé cotapány,from, taxation. Three years later the charter was amended, and the sixth section of the amendatory act
 
 *60
 
 provided that the capital stock, with all machines, wagons, cars, engines, or carriages belonging to the company, with all their works or other property, and all profits which shall arise from the same, shall be vested iu the shareholders in proportion to their shares, and that the same shall be deemed personal estate and shall be exempt from any public charge or tax whatsoever for the period of five years from and after the passage of the act, which period has long since elapsed.
 

 Attempt is made in argument to show that an exemption fro,m taxation may be implied from some of the provisions .'of the act' to provide for the completion' of the railroad and its wpst branch. - Brised solely on that theory, the error assigned is that the ordinance of the State imposing the tax is in violation of that provision of the Constitution which prohibits the States from passing any law impairing the obligation of contracts. Pursuant to thaf theory the plaintiffs contend that the legislative act to complete the railroad enacted a mode of making payments by .the company to the State, which, when.'the act was accepted by the company, became a binding' contract between the parties, within the protection of that provision of the Constitution, and that as such it could not be rescinded by any subsequent legislation, and that the ordinance does impair the obligation of that contract by providing another and a different mode of enforcing the payments without the consent of' the company.
 

 Serious difficulty would-.arise in sustaining the judgment of the State court if- the view assumed in the proposition was correct, that the ordinance was a mere change' of the order of disbursing the receipts and earnings of the company, instead of being what it purports to be on its face, an expression of the sovereign will of the people -of the State levying taxes to pay arid discharge the indébtedness of the State. ■
 

 Poiver to tax is granted for the benefit of the whole people, and none have any right to complain .if the power is faifly exercised and the proceeds are properly applied to discharge the obligations for which the taxes were iniposed. Such- a-
 
 *61
 
 power- resides in the State government as a part of itself, aud need not be reserved When property of any description is granted to individuáis or corporate bodies.
 
 *
 

 Unless exempted infferms which amount to a contract not to tax, the property, privileges, and franchises-of a corporation are as much the-legitimate'subjects of taxation-as any Other property of the citizens which is within the sovereign power of the State. ' Repeated decisions,of this court have held, in respect to such corporations, that the taxing power of the State is never presumed to be relinquished, and consequently-that it exists -unlessthe intention to relinquish it is declared in clear aud unambiguous terms.
 
 †
 

 Express exemption is not pretended, nor does the act to provide for the completion of thb railroad contain any provision which, when properly construed, affords any support to the proposition that any such contract exists between the company and the. State, either express or implied, even if it could be admitted that mere implication is sufficient, which may well be questioned, as ¡the current of the decisions of this court wai-rant the conclusion that if such an exemption be claimed it must be made toappear in clear, explicit, and unequivocal terms.
 

 Authorities from, numerous sources are cited by the plaintiffs, but none of them show that a lawful tax on a new subject, or hn increased tax on an old one, interferes with a contract or impairs its obligation, within the meaning of.tfe Constitution, even thopgh shell taxation may affect particu lar contracts; as it may increase the debt of one person and lessen the security of another, or may impose additional burdens upon one class and release the burdens of another, still the tax must be paid unless prohibited by the Constitution, nor can it be-said that it impairs the obligation of any existing oontract in its true legal sense.
 
 ‡
 

 
 *62
 
 Properties of every kind over' which the. sovereign power of a-State extends are objects of taxation outside of the .means and instruments of the Federal government.
 
 *
 

 Unrestricted by constitutional limitations the only restraint upon the taxing power of the States is the responsibility of those in whom the power is lodged, and the power of appropriation of the-proceeds; when not so restrained, is equally u.nlimited.
 
 †
 

 Questions not involved in the assignment of errors will not be examined,'nor is it necessary, as all agree that the main question in the Case is whether the ordinance impairs the obligation of any contract made and concluded between the State and the company before tlie ordinance was adopted.
 

 Unless the power of the State to tax the company was surrendered by the antecedent act to provide for.tbe completion of the railroad, it must be conceded that the power exists, as it is plain that none of the other acts referred to afford any support whatever to such a proposition.
 

 Five years before that act was passed the company made default in the payment of the interest falling due on the: bonds which the State issued for their benefit, and by that act the legislature postponed and released the lien of the State, which' was a first 'lien on all their property to the amount of four millions' three hundred and fifty thousand dollars,-and acceptéd in its stead a second lien upon the same property, in order that the company might issue six millions of dollars of bonds of their own and be able to secure their payment, principal and interest, by a first mortgage upon the.same property, to complete the main line of the road and its west branch and the bridge therein described.
 

 Moneys belonging to the company from that time weré to be placed in the hands of.the fund commissioner ;ereated by the act,' and were to be disbursed by him as follows: (1.). Amounts required for the(aetuál current expenditures in operating the railroad and carryiug on the ordinary business
 
 *63
 
 of the corporation, including all suras that maybe necessary for keeping the same in a good'state of repair, aud for such additions to the rolling stock, &c., as maybe required to enable the company to transact the business of the railroad. (2.) -Amounts sufficient' to pay the salary of the fund commissioner. (3.) Amounts sufficient to pay the interest upon said first mortgage bonds, as the same shall fall due; (4.) Amounts necessary to pay the cost of the construction and equipment .of the railroad. (5.) Amounts sufficient to pay accruing dividends on' preferred stock, not exceeding six. per cent.' per annum thereon, as provided in the act. (6.) Amounts sufficient to pay the interest due on the outstanding bonds of the State previously loaned to the company. (Lastly.) He shall disburse the. surplus to the payment of the principal of said first-mortgage bonds until the same shall be fully paid off, or if none'of. such bonds shall have become due, then to the payment .of the principal of the bonds of the State, if any are still outstanding, and the balance shall be paid ovér to the .company.
 

 Further examination of those provisions is certainly unnecessary, as it is too plain for argument that they do not afford the slightest support to the views, of the plaintiffs. On the contrary, they are entirely silent upon the subject, of taxation, and-fully justify the remarks of the State court when they say that the subject of taxation forms no part of the contract contained in the act Under consideration.
 
 *
 

 Nothing'is'said about taxation, and it does not seem to have entered into the contract between the. parties, but was obviously left where the law had placed it before the act was piassed, nor was any provision made for the payment of taxes unless it may be ^held that the disbursements for that purpose may fairly be included in such as are required to pay the current expenditures in carrying on the ordinary business of the corporation.
 
 †
 

 Reference is also made to some other sections of the act
 
 *64
 
 as supporting the proposition submitted by the plaintiffs, but it is so obvious that they cannot be so regarded without departing from the established rules of law applicable in such cases, that it is not necessary to pursue the discussion.
 

 Like controversy exists between the State and another of the railroadsmientioned in the ordinance, in which case it is contended that the ten per cent, charge imposed by that instrument is not a tax within any correct meaning of that word, that it is an appropriation of the property of the, company without due process of law, or the taking of the property of the company without just compensation, but no'such questions are open for examination in this case, as no such errors are assigned in the record.
 

 Judgment affirmed.
 

 ; The CHIEF JUSTICE dissented. STRONG, J., did not sit.
 

 *
 

 Cooley on Constitutional Limitations, 127-280.
 

 †
 

 Society for Savings
 
 v.
 
 Coite, 6 Wallace, 606; Philadelphia and Wilmington Railroad Co.
 
 v.
 
 Maryland, 10 Howard, 893; Providence Bank
 
 v.
 
 Billings, 4 Peters, 561; Jefferson Bant
 
 v.
 
 Skelly, 1 Black, 436; Ohio Life: Insurance and Trust Co.
 
 v.
 
 Debolt, 16 Howard, 416.
 

 ‡
 

 Blackwell on Tax Titles (2d ed.), 408.
 

 *
 

 Hamilton Co.
 
 v.
 
 Massachusetts, 6 Wallace, 639.
 

 †
 

 Griffin
 
 v.
 
 The Mayor,
 
 4
 
 Comstock, 419; Crowell
 
 v.
 
 Lawrence, 41 New York, 141.
 

 *
 

 City of St. Louis
 
 v.
 
 Insurance and Trust Co., 47 Missouri, 165.
 

 †
 

 Railroad Company
 
 v.
 
 Maguire, 49 Missouri, 490; Pacific Railroad
 
 v.
 
 Maguire, 51 Id. 142.