JOHN C. DAVIS, Attorney at Law, for himself and all other duly licensed and active practicing attorneys and counselors at law, similarly situated, within the State of Utah, Plaintiff v. OGDEN CITY, UTAH, a Municipal Corporation, and CLYDE M. WEBBER, Ogden City Recorder, Defendants.

No. 7241. Decided Oct. 24, 1950. (223 P. 2d 412.)

For majority opinion, see 117 Utah, 315, 215 P. 2d 616.

*L. O. Thomas,* Salt Lake City, *Derrah B. Van Dyke, Stuart P. Dobbs,* Ogden, for plaintiff.

*George S. Barker, Paul Thatcher,* Ogden, for defendants.

*George A. Critchlow,* Salt Lake City, *George W. Worthen,* Provo, amici curiae on petition for rehearing.

On Petition for Rehearing

Rehearing denied.

PRATT, C. J., and WADE, J., dissent.

WOLFE, Justice (concurring in the order denying the Petition for Rehearing).

I express below my reasons for denying the petition for rehearing in this case. I have considered the new point raised by the briefs in support of the petition for rehearing. This being a case of prime importance to large groups of our citizens, we should not take refuge in the rule that points not raised in the original hearing will not be considered. As stated in *Garner* v. *Thomas et al.,* 94 Utah 295 at page 299, 78 P.2d 529, that rule is one designed for the orderly administration of the disposal of points on appeal but is not as the law of Medes and Persians. There may be exceptions, and this is one of them.

Point I in Davis' brief on petition for rehearing asserts that the Ogden City Ordinance was passed without regard to the limitation on excise taxes contained in Section 3, Article XIII of the Constitution of Utah.

Section 3, Article XIII contains the following: " * * * No excise tax rate based upon income shall exceed four per cent of net income. The rate limitations herein contained for taxes based on income and for taxes on intangible property shall be effective until January 1, 1937, and thereafter until changed by law by a vote of majority of the members elected to each house of the Legislature."

The brief proceeds under Point I with:

(A) The tax imposed by the Ogden Ordinance is an excise tax. (B) The tax is based on income. (C) The constitu-

tional limitation above quoted applies to municipal taxes. For the purposes of this discussion, I think we may admit these three propositions.

I pass from these three propositions to D, E, F and G, all of which will be discussed in part together because they all pertain to the propositions that this tax imposed by the ordinance is unconstitutional because it brings about, when fitted in with Section 3, Article XIII, an unconstitutional discrimination. In order to inform the reader as to the proposition contained in the brief of Davis, the petitioner, I quote the four propositions hereunder before each argument but before doing so, address myself to a general discussion of the office performed by Section 3, Article XIII.

Section 3, Article XIII, puts a ceiling on the amount of excise tax which, based on income, may be collected. The ceiling is 4% of the net income. Laying aside what constitutes net income and how figured, it appears that in any case the tax figured at twenty cents per thousand of gross income must not exceed 4% of net income. For illustration, if a company grosses $1,000,000 from sales, the excise tax laid by this ordinance would be $200.00 (1000 times .20 cents). But if the net income, for instance, were $4000.00, the company having expended much money on advertising, the tax could not exceed $160 (4% of $4000). More illustrations are set out hereunder.

Here arises at once a query which I doubt need at this time be answered. Is not the 4% excise tax the limit of the total excise taxes which may be based on income whether state and/or city? If for example the 4% is all taken up by state excise taxes, would there then be room left for the imposing of any further license tax by a city and which takes precedence. Also arises the question whether Section 3, Article XIII applies to other than state excise taxes.

Laying aside these queries which even though we as-

sume for the purposes of this discussion that Section 3, Article VIII applies to excise taxes imposed by municipalities, need not trouble us except perhaps as they may enter incidentally into the ratio decidendi.

Now as to whether the ordinance will work an unconstitutional discrimination: I gave above one illustration where a business grossing a million dollars a year made a net of $4000. At this point I call attention to the word "rate" in the line reading " * * * No excise tax *rate* based upon income shall exceed four per cent of net income." It does not read " * * * no excise tax * * * based upon income shall exceed 4% of the net income." The word "rate" usually connotes a proportion. A levy on tangible property is the rate or proportion of the assessed value—so many mills or cents on the dollar which applies equally throughout a certain category or tax bracket—it being fixed. I have difficulty in applying the word "rate" to this constitutional provision. I think the drafters of that amendment must have meant "no excise tax [i. e., the result of an applied rate] based on income shall exceed 4% of the net income." I have so interpreted the language.

Also I should state at this point that constitutionality must be measured against the 5th and 14th Amendments of the Federal Constitution, and not the equal protection of our state constitution, because as far as discrimination under our constitution is concerned, it would seem that if the people themselves put in the state constitution the factor which makes the discrimination, to wit, the variable ceiling which brings about the dissimilarity in the application of law or ordinance in excise tax cases, no complaint will be heard because the discrimination was part of the basic law.

But under the Federal Constitution the only way that one business with a gross income equal or less than another would pay a greater tax is because it had a larger net than the other business. Section 3 of Article XIII really announces

a variable ceiling and this variable ceiling applied to the ordinance may result in businesses with the same or less gross than other businesses paying a greater tax.

To proceed then with several more examples. If in the above illustration the net income were $5000 instead of $4000, 20c on each one thousand dollars of the million dollars would exactly equal the 4% on the said net income of $5000. If the net income were $6000, the excise tax of 20c per $1000 would of course still be $200 but 4% of $6000 is $240 but since $200 does not exceed $240 the total of the $200 is payable.

If the gross should be $10,000,000 the 20c per $1000 would equal 20c x 10,000 or $2,000. In such case the $700 ceiling and not the 4% on net income ceiling would first limit the tax. If the business made no money or lost money then 4% of nothing would be nothing and the excise tax could not exceed nothing which would of course mean that nothing need be paid.

I see nothing in Point ID which leads to the conclusion that if *some* taxes when figured on the gross would exceed 4% of the net income, the ordinance would be invalid. Certainly the 4% net is only a ceiling. Each taxpayer may apply that ceiling if it is applicable to his tax. It means, however, that each taxpayer in order to take advantage of the ceiling may have to disclose his net and hence all his expenses and deductions by which he arrives at that net. It may be that there should be an end of reports and returns that a taxpayer need make and an end to the number of authorities to which he must reveal the details of his business and his income and expenses, but the remedy I think is political.

Can we point to a situation where some businesses (and I include professions among businesses in this discussion) which have a less or equal gross income than other businesses, yet pay more taxes than those other businesses un-

der the ordinance? Of course this will be true as shown above if they have a net which exceeds the net of other businesses having the same gross. They may have the same gross and yet pay different amounts in taxes. But I doubt if they are "similarly situated" if they take in the same gross but different net incomes. Take the illustration of the $1,000,000 gross. One business spends more than that for advertising and has a loss. Another with exactly the same gross with good will established in exactly the same type and kind of business, let us say the manufacture and sale of shoe polish, has a net income of $60,000. The one would, under the ordinance, pay no excise tax, the other would pay $200, the tax under the ordinance being considerably under the ceiling of 4% of a net of $60,000 which is $2,400. I do not think the fact that one makes sufficient net so that the constitutional ceiling is not reached by the gross income tax in his case while the other makes so little or no net so to make the constitutional ceiling of 4% of net applicable to him works an unconstitutional discrimination. The very fact that they have different net incomes makes them as to this ceiling, dissimilarly situated. The fact that the ceiling varies according to the net income makes a dissimilarity as far as discrimination is concerned. The ceiling works in favor of the party who has the lowest net and hence has gotten the least benefit from his gross income.

Among those comparatively few who must pay this ordinance imposed tax and who have a net, 4% of which is greater than 2/100 of one percent (20c per each thousand dollars of gross) of their gross, there may be some variation in the tax among those who have exactly or substantially the same gross. Take for instance the two cases I presented where there is à gross of $1,000,000 but having different nets all under $5,000. The one with $3,000 net would pay $120; the one with $4000 would pay $160, and the one with $5000 net would pay $200. One with $2000. net would pay $80.00. The one with no net would

pay nothing. Thus among that limited class the different nets under $5000 would result in different tax maximums although they all had the same gross income. But the factor which works these different maximums among those with the same gross is not some arbitrary factor extraneous to the business. It arises from a factor intrinsic in the business and directly connected with income both net and gross, the net being the gross less expenses, the gross being the total intake. Thus as the net increases, the ceiling or maximum increases until it reaches a maximum which is a sum produced by 20c per thousand on the gross which is the amount of the tax itself. Within that limited range of taxpayers whose net is from zero to $5000 this maximum varies directly with the net so that when we consider the variable ceiling of 4% on net income which is the variable factor of which complaint is made, we find that its operation synchronizes with the net. If the ceiling became less as the net rose, the differences in the variable ceiling might bear no reasonable relationship to the purposes of the ceiling and unconstitutionality could be tenably argued. The variable ceiling in this case works in favor of the party who has the lower net and hence has gotten less benefit from his gross income.

Under Point I then, I would agree that:

(A) The tax imposed is an excise tax; (B) The tax is based on income; and for the purposes of this case only that (C) The constitutional limitation applies to municipal taxes, although that is doubtful.

The petitioner further contends:

"(D) The rates of tax under the Ogden ordinance exceed four percent of net income."

Much that has been said above is material under this point.

That in some cases the computed amount of tax under

the Ogden ordinance will exceed 4% of the net income is admitted but in such case the taxpayer will need to pay only up to the 4% and the fact that one party in a certain year pays no tax because of the variable ceiling which ceiling is determined not by by an outside imposed figure but by internal factors within the business itself, while another party having the same gross does pay a tax, does not make it unconstitutional for reasons above enunciated.

"(E) The unconstitutionality of the ordinance may be invoked by the plaintiff."

Granting that the alleged unconstitutionality of the ordinance may be invoked by the plaintiff, he has not, under Point I, made a case of unconstitutionality. If plaintiff or those whom he represents can show that the ceiling applies to them, they will either not pay the tax at all or only a part of it.

"(F) The tax is discriminatory under which head it is contended that it may be made confiscatory."

That the tax is unconstitutionally discriminatory has been previously discussed.

Confiscation: The fact that a city may raise the rate from 20c a $1000 gross—a rate of 2/100 of 1% to 1 percent or even to 5%, I do not believe is an argument for declaring 2/100 of 1% unconstitutional because those larger rates may be confiscatory. It may be difficult to know where to draw the line after the door is once opened, between confiscatory and non-confiscatory rates but for that reason I am not prepared to say that because a rate may sometime be made so high as to be confiscatory that we must close the door now on the method used for measuring the excise tax while it calls for only a modest tax. We must meet confiscation when it comes before us. While the income tax may be the fairest of all excise taxes because its incidence is on money earned, it does not follow that other methods of taxation are illegal.

"(G) Opportunities for favoritism and oppression—a form of discrimination."

I admit that there may be something inherent in the use of "gross receipts" as the basis for a tax base which may make favoritism and oppression easier in that those building up businesses may be subject to large expenses which will cut down their net, although they gross a large sum. It would seem that under present rates and ceilings or any comparable rate, there can be little likelihood of oppression. I can see, however, that if the cities would place such a high rate on the gross as to make the tax confiscatory in that it would take so much of the gross as not to allow a fair opportunity to produce a net or if the maximum fixed by an ordinance would be so high and/or the ceiling of 4% of the net removed by the legislature or all or any of these things done or happen, the tax might become confiscatory. The difficulty of basing a tax on the gross is, of course, that if the rate is too great it will take so much of the gross as to leave no net. I can see a purpose in trying to stop this measure for an excise tax because of the Pandora's box it may open. But that has not happened and I cannot see anything in the present ordinance that makes it unconstitutional.

I think the ordinance does contain the potentiality for taxing businesses out of existence and for favoritism and oppression. What tax plan has not this possibility? Until the tax becomes or tends toward confiscation, I do not believe we can rule it out and then on the ground that it is confiscatory and not on the ground of unconstitutional discrimination.

Point II. The argument here seems to be that this ordinance does regulate the practice of law. I think not. It does require the licensee to keep his license displayed and visible at all times. While it seems incongruous with the profession of law and medicine to require a lawyer or doctor

to keep posted in his office a license which is in effect only a receipt showing that he has paid his city occupational tax, (because some other body has actually licensed him as a professional man), I think this is only administrative to protect the professional man and the city in its tax collection. Likewise, keeping books and records is of the same stripe. Certainly professional men may be required by the state and federal government to do so for income tax purposes. I do not see why this is consistent only with a regulation but inconsistent with taxation regulations. A person must obtain a license to drive an automobile and certainly the license is for collection of a tax as well as for regulation, yet it is made a misdemeanor to drive a car without obtaining a license. Cannot it then be made a misdemeanor to fail to obtain a license to do business when the license is a means of collecting a tax for carrying on this business? Can it not be made a misdemeanor to fail to pay a tax? But, if this provision for a penalty may not be imposed for failure to pay a tax, then the penalty rather than the ordinance would fall. See *Salt Lake City* v. *Christensen Co.*, 34 Utah 38 at page 47, 95 P. 523. The provision that a license may be revoked for a violation of any provision of the ordinance or for such other cause justified by law may be somewhat of a bluff because the courts might hold that a city may not revoke a lawyer's for doctor's license to practice for any violation of the ordinance. And it may hold that no cause short of unprofessional conduct in law would be a ground for revocation and that the Supreme Court in the case of lawyers, and the medical board in the case of doctors, only may do that. But an ordinance which contains provisions for revocation or provisions for a penalty which may be nugatory does not make the operative portion imposing a tax nugatory nor convert the real purpose of the ordinance which is revenue raising into a regulation of the professions. I think Point II is not well taken.

Point III. This has already been well considered by the

court. But the ultimate question is not whether professions are usually classed as businesses but did the ordinance intend to include them as business. If it intended to impose a license tax on professions, was that within its legal powers?

I now note the points in the brief Amicus Curiae.

According to Amicus Curiae, the constitution by implication forbids the legislature granting cities the power of imposing a license tax for revenue. He argues that it permits license for the purpose of regulation only, and incidental to regulation, fees may be charged to pay for the cost of regulation, but these need not be exactly equal the cost of regulation. Approximation is sufficient. Under Point II petitioner, Davis, claims that the ordinance in effect regulates the practice of law and hence is beyond the power of the municipality because the practice of law cannot be regulated by a municipality even though the legislature should authorize it. Thus attorneys for petitioner and amicus curiae approach the matter from different angles. Amicus Curiae contends that the legislature by an implied restriction in our Constitution (Section 12, Article XIII) cannot delegate to municipalities the power to lay an excise tax on business and hence even if the practice of law is considered a business, a municipality cannot tax it through the licensing process, because it cannot lay a license tax on *any* business. He suggests that if the case of *Ogden City* v. *Crossman* meant to hold that the legislature had the power to enable municipalities to pass ordinances to raise taxes by licensing businesses (which I think it did), it failed to take into account the implied restriction contained in Sections 2, 3, 5 and 12 of Article XIII of our Constitution. On the other hand, Davis, the petitioner, does not contend that there is an implied constitutional restriction which prevents the legislature from giving municipalities the power to raise money by license taxation, but claims that the Ogden Ordinance is in fact an ordinance for regulation and that

(conceding the power of municipalities to license for regulation business in general) as to the practice of law it cannot regulate and the ordinance being for the purpose of regulating the practice of law, it must fall.

Amicus Curiae's position is that Section 12, Article XIII of the Constitution was put in the constitution because the framers after setting out in Section 2 of Article XIII a mandate to tax all unexempt tangible property in the state in proportion to its value and under Section 3 of the same article directed the legislature to provide by law for a uniform and equal *rate* of assessment and taxation, wanted it to be understood that it did not intend to preclude by those provisions the power of the legislature to levy stamp taxes or a tax *based* on income. Consequently, it wrote specifically into the constitution this grant of power to the legislature even though the legislature was not so restricted, it having such powers as are not withheld by our constitution or not granted to the federal government.

My difficulty with amicus curiae's position is that I do not see where he turns the corner. That is, I do not see how he construes this provision which expressly states that the legislature shall not be restricted from imposing a stamp tax, income tax, license or occupation tax as a restriction on the legislature from empowering cities to impose such taxes *unless* he draws it as seemingly as does Idaho and Montana from the general tax scheme. I can see that it would be unlikely that the legislature would empower cities each to impose its own income tax. That would result in great lack of uniformity although why cities should not have difficult income tax rates as they now have different license tax rates and bases is not so clear. And this may give us the clue to the underlying idea that amicus curiae has in mind. He senses that each city may be dealing with its own local situation and that such local situations may require or make appropriate the imposition of *regulation* on some businesses

but not on others; hence he argues that it seems appropriate and wise that the legislature be given power to delegate to cities the power to *regulate* businesses, and to levy a fee (tax) for costs of regulation but when it comes to *raising revenue* by imposing an excise tax on those businesses, such appears to be most appropriately a state-wide function. And the attorneys for Davis, the petitioner, have at bottom the same idea when they argue that cities should be permitted to license for regulation those businesses that lend themselves to local action but that the practice of the law is not one of these.

It may be asked why other professions would be any more amendable than would the practice of law to local regulation laying aside the point that regulation of the practice of law is a judicial and not a legislative function. Why should cities any more be permitted to regulate the practice of medicine? Why are not all professions as far as regulation is concerned largely such as to require state-wide regulation so as to insure uniformity? Why does not uniformity of regulation of those professional businesses lend itself peculiarly appropriate to a pattern of state-wide regulation as much as does the regulation of liquor and that part of the regulation of motor vehicles which calls for state-wide rules such as rules for passing, rules pertaining to size of cars on the road, licensing, etc., as distinguished from speeds in towns, and those traffic regulations which the very local conditions require to be left to local authorities?

The attorneys for the petitioner have this in mind when they argue that Section 15—8—80 empowers the city to levy a license *fee* for the purpose of raising revenue only when it is coupled with regulation. I suppose then it would need to be further argued that the fee must not be more than approximately or reasonably sufficient to pay for the cost of regulation. It should be here noted that the attorneys for petitioner are not very explicit in their contention that

the legislature did not intend to give by Section 15—8—80 the power to tax alone but only to tax *and* regulate. They do not say how much tax and how much regulations. I have supplied for them this missing link in their argument, to-wit, that the power to tax or to raise revenue was only incidental to regulation and hence if they are to be coupled together as a composite power rather than two powers, it must be on the theory that the taxing part of the power is incidental to the regulatory power and can only be used to the extent of paying for the regulation although exactness is not required. See *State* v. *Nelson*, 36 Idaho 713, 213 P. 358. The difficulty with this, as Mr. Justice Latimer stated in his opinion in the case at bar [215 P.2d 618], is that the power to *raise revenue* by levying and collecting a license fee or tax on any business within the limits of the city is explicit and given in unequivocal terms. The additional phrase reading "and regulate the same by ordinance * * * " seems to be tacked on but in such a way as not to make the foregoing power to raise revenue incidental to it but rather as a separate power to regulate.

If the constitution prohibits the legislature from delegating to cities the power to raise revenue by license taxes, it did it in a most peculiar and roundabout way—denial by implication and a far-fetched implication at that when a direct prohibition would have been clear. It would have been simple to say "cities and towns shall not have power to levy taxes" or words of equivalent import, or the legislature shall not have power to delegate to cities the power to levy excise taxes.

Since cities and towns have no powers except those granted expressly by the legislature or necessarily implied such municipalities would be restricted to ad valorem taxes alone and in these days when the cost of city government along with all other costs has risen greatly this would seem to be an unfortunate restriction. But the short and simple dispo-

sition of the argument is that no prohibition by implication or otherwise on the powers of the legislature to grant cities and towns the power to levy excise taxes can be read into the constitution. This disposes preemptorily of the argument of amicus curiae.