GERALD R. LUBLIN *v.* F. GEORGE BROWN, TAX COMMISSIONER OF STATE OF CONNECTICUT

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and LONGO, Js.

Argued January 7—decision released March 25, 1975

*Richard K. Lublin,* with whom, on the brief, was *Dennis N. Kantor,* for the appellant (plaintiff).

*Richard K. Greenberg,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the appellee (defendant).

HOUSE, C. J.   The plaintiff brought this action seeking a declaratory judgment that §§ 30 and 31 of Public Act No. 223 enacted by the 1972 session of the General Assembly are unconstitutional, null, void and unenforceable and a refund of all monies collected by the defendant pursuant to the provisions of those sections.   Section 31 of the act is simply a repealer of an earlier statute and the plaintiff's attack is entirely directed to the provisions of § 30 which is now printed as § 51-81b of the General Statutes entitled "Occupational tax on attorneys."[1]

---

[1] "[General Statutes] Sec. 51-81b.   OCCUPATIONAL TAX ON ATTORNEYS.   Any person who has been admitted as an attorney by the judges of the superior court, and who was engaged in the practice of law, including the performance of judicial duties, in the year preceding the year in which an occupational tax is due hereunder, shall, on or before July 15, 1972, and on or before January 15, 1973, and annually thereafter, pay to the tax commissioner a tax in the amount of one hundred fifty dollars.   Any such person who, prior to July 1, 1972, paid the fee provided in section 51-81a of the 1971 supplement to the general statutes shall be entitled to have such payment credited against the tax due on July 15, 1972, hereunder.   Upon failure of any such person to pay any sum due hereunder within thirty days of the due date thereof, the provisions of section 12-35 shall apply with respect to the enforcement of this section and the collection of such sum.   The tax commissioner shall notify the chief court administrator of the failure of any person to comply with the provisions of this section and the chief court administrator shall notify the judges of the superior court

Public notice of the pendency of the action was published in several newspapers in the state and subsequently, on motion of the plaintiff, the Superior Court entered an order pursuant to the provisions of § 52 of the Practice Book and § 52-105 of the General Statutes authorizing the plaintiff "to prosecute this action on behalf of all persons admitted as attorneys by the judges of the Superior Court for the State of Connecticut and who are engaged in the practice of law, including the performance of judicial duties in the State of Connecticut and who are similarly situated," and authorizing the attorney general to defend the action on behalf of all such persons who are seeking to uphold the act.

The case was not tried in the Superior Court and the parties, instead of a trial, stipulated to the facts and requested a reservation to this court, submitting

of such failure. Any individual required by the provisions of this section to file a return or to pay a tax hereunder who shall fail to file such return or to pay such tax when due shall be liable for a penalty of twenty-five dollars, which penalty shall be payable to, and recoverable by, the commissioner in the same manner as the tax imposed under this section. If any tax is not paid when due as provided in this section, there shall be added to the amount of the tax, in addition to any penalty hereunder, interest at the rate of one per cent per month or any fraction thereof from the date the tax became due until the same is paid. If the commissioner is satisfied beyond a reasonable doubt that the failure to file a return or to pay the tax was due to reasonable cause and was not intentional or due to neglect, he may abate or remit the whole or any part of any penalty under this section. This section shall not apply to any attorney whose name has been removed from the roll of attorneys maintained by the clerk of the superior court for Hartford county, or to any attorney who has retired from the practice of law, provided such attorney shall file written notice of such retirement with the clerk of the superior court for Hartford county, or, with respect to the tax due in any calendar year, to any attorney serving on active duty with the armed forces of the United States for more than six months in such year."

five questions for the consideration and advice of this court.[2] The court made the reservation in accordance with the stipulation of the parties.

The stipulated facts include a recital that the plaintiff has been admitted as an attorney by the judges of the Superior Court and is actively engaged in the practice of law. The defendant is the tax commissioner of the state of Connecticut and is charged by § 51-81b with the collection of the occupational tax prescribed by that section.

Before discussing the questions which have been reserved for the advice of this court, we deem it necessary to clarify one ambiguity in the plaintiff's motion made pursuant to the provisions of § 52 of the Practice Book and the court's order thereon. Section 52 of the Practice Book, entitled "Numerous Parties," provides that when the persons who might be made parties are very numerous so that it would

[2] "1. Do the provisions of Sec. 51-81b General Statutes of Connecticut imposing an occupational tax on any person in the State of Connecticut who has been admitted as an attorney by the judges of the Superior Court and who has engaged in the practice of law including the performance of judicial duties violate the equal protection provisions of (a) Article First, Section 1 of the Connecticut Constitution? (b) Section 1 of the 14th Amendment to the United States Constitution?

"2. Do the provisions of Sec. 51-81b General Statutes of Connecticut violate the provisions of Article Second of the Constitution of the State of Connecticut?

"3. Is the plaintiff, Gerald R. Lublin, and others similarly situated, obligated to pay the tax imposed by 51-81b General Statutes of Connecticut during the calendar year 1974?

"4. Is the plaintiff, Gerald R. Lublin, and others similarly situated, entitled to a refund of all monies paid as occupational taxes pursuant to § 51-81b General Statutes of Connecticut during the calendar years 1972 and 1973?

"5. If the plaintiff, Gerald R. Lublin, and others similarly situated are entitled to a refund of all monies paid as occupational taxes pursuant to § 51-81b General Statutes of Connecticut, is the defendant Tax Commissioner liable for interest on said refunds?"

be impracticable or unreasonably expensive to make them all parties, one or more may sue or be sued or may be authorized by the court to defend for the benefit of all. As we have noted, the general class which is subject to the tax in question is composed of "[a]ny person who has been admitted as an attorney by the judges of the superior court, and who was engaged in the practice of law, including the performance of judicial duties," during the preceding year. Paragraph one of the plaintiff's complaint alleges that he is an attorney at law admitted by the judges of the Superior Court and "engaged in the practice of law." There is no stipulation that his practice of law includes the performance of any judicial duties. Paragraph two of the complaint alleges that he brings the action "on behalf of himself and all other attorneys practicing in the State of Connecticut, including the performance of judicial duties, similarly situated." It is apparent that the plaintiff is not "similarly situated" to those persons who are engaged in the performance of judicial duties, and the plaintiff has not asserted such a claim.

In his motion pursuant to the provisions of § 52 of the Practice Book, the plaintiff represented that his individual situation in relation to the statute in question "is typical of all other persons admitted as attorneys by the judges of the Superior Court for the State of Connecticut and who are engaged in the practice of law throughout the State of Connecticut" and that "[h]e is competent to prosecute this action on behalf of such taxpayers." His motion, however, was for an order allowing him to sue "on behalf of all persons admitted as attorneys . . . and who are engaged in the practice of law, including the performance of judicial duties,

who are similarly situated." The order of the court was in the same language, authorizing the plaintiff to prosecute the action on behalf of all admitted attorneys "who are engaged in the practice of law, including the performance of judicial duties . . . and who are similarly situated" and the attorney general to defend the same described persons who seek to uphold the constitutionality of the legislation.

The problem is more than one of semantics. The ambiguity arises from the authorization to the plaintiff, by which, on the one hand, he is to represent all attorneys who are engaged in the practice of law, including the performance of judicial duties, but which, on the other, is limited to representation of those "who are similarly situated," and the plaintiff, although engaged in the general practice of law, is not engaged in the performance of judicial duties.

It is obvious that members of the bar who are engaged in the performance of judicial duties and particularly those who are constitutional officers in the judicial department of the state are in a different status from attorneys engaged in the general practice of law. They are also the only salaried constitutional officers of the state on whom a tax is levied because of the performance of the official duties which they perform for the state in the judicial magistracy. Under these circumstances, it can hardly be said with accuracy that the plaintiff's situation was typical of that of all persons on whom the tax is levied. The record and briefs disclose that no consideration whatsoever was given in these proceedings to the difference in status between a practicing attorney and a judicial officer and the case was briefed and argued solely on the constitu-

tionality of the tax as applied to those "who are similarly situated" to the plaintiff as an attorney engaged in the general practice of the law. In these circumstances, we treat the case as did the parties and answer the reserved questions only so far as they are applicable to persons "who are similarly situated" to the plaintiff.

Our foregoing observations are in no way intended to imply that the difference in status would require a difference in result, or as an invitation to seek such a determination. They are simply a recognition of the established legal principle that "[w]here the only common interest of members of a class is a common interest in some of the questions of law or fact involved in a suit relating to rights which are several, the judgment cannot, consistently with due process, be binding upon or affect the rights of any persons other than those who are or may become actual parties to or participants in the litigation." 59 Am. Jur. 2d 420, Parties, § 53. "[A] selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." Id. § 60, p. 432; see *Hansberry* v. *Lee,* 311 U.S. 32, 40–43, 61 S. Ct. 115, 85 L. Ed. 22.

The plaintiff challenges the constitutionality of the tax on two grounds. The first is that it violates the equal protection clauses of both § 1 of the fourteenth amendment to the constitution of the United States and article first, § 1, of the constitution of Connecticut. The second is that it violates the provisions of article second of the constitution of Connecticut in that, in enacting the statute, the General

Assembly "overreached its bounds and infringed upon the magistracy of the co-equal judicial branch of government in attempting to regulate and tax it."

In considering the plaintiff's first claim of unconstitutionality, we again note that the equal protection clause provision of article first, § 1, of the constitution of Connecticut has a meaning equivalent to the similar provision in the fourteenth amendment to the constitution of the United States upon which the plaintiff relies. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 105, 90 A.2d 862; *Franco* v. *New Haven,* 133 Conn. 544, 548, 52 A.2d 866; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702. The basis for the plaintiff's argument in support of his first claim is that attorneys have been singled out as a class, have had a tax imposed upon them, the sole purpose of which is to raise revenue, and that such a tax is imposed upon no other group and, therefore, is unreasonable, arbitrary and bears no fair and substantial relation or relevance to the object of the legislation.

It is well settled that a plaintiff who attacks a statute on constitutional grounds has no easy burden. As this court said in *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49: "Because of the separation of powers, one claiming that a legislative enactment is invalid on the ground that it is unconstitutional must establish its invalidity on that ground beyond a reasonable doubt. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 470, 217 A.2d 698. . . . [W]here a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the

statute even though that construction may not be the obvious one. *Carilli* v. *Pension Commission,* 154 Conn. 1, 8, 220 A.2d 439; *Ferguson* v. *Stamford,* 60 Conn. 432, 447, 22 A. 782; *Wilton* v. *Weston,* 48 Conn. 325, 338." To like effect, we said in *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599: "Courts in passing upon the validity of a legislative act do not feel justified in declaring it void unless there is a' clear and unequivocal breach of the constitution . . . . We approach the question with great caution, examine it with infinite care, make every presumption and intendment in favor of validity, and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt." As we noted in *Kellems* v. *Brown,* 163 Conn. 478, 487, 313 A.2d 53: "In Connecticut, the power to levy taxes is vested in the General Assembly. *Beach* v. *Bradstreet,* 85 Conn. 344, 348, 82 A. 1030. Unlike the federal constitutional limitation which existed prior to adoption of the sixteenth amendment, it appears that this state's power of taxation has never been constitutionally limited except by the constitutional requirements of equal protection and due process. See *Montgomery* v. *Branford,* 107 Conn. 697, 707–8, 142 A. 574." As the United States Supreme Court observed in *Madden* v. *Kentucky,* 309 U.S. 83, 87–88, 60 S. Ct. 406, 84 L. Ed. 590, and repeated with approval in *San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 40, 93 S. Ct. 1278, 36 L. Ed. 2d 16: "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that 'the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation,' and the passage of time has only served to underscore the wisdom of that recognition

of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

In *State* v. *Murphy,* 90 Conn. 662, 666, 98 A. 343, this court similarly stated: "The taxing power is an inherent attribute of sovereignty and as such unlimited in character and scope save as limitations may be self-imposed. Under our form of government its exercise is vested in the legislative department which may exercise it for lawful purposes in its discretion both as regards the choice of subject-matter of taxation and the extent and manner of the tax, save as constitutional limitations may intervene, and in the case of the States save also as the property and agencies of the national government within their borders are not within the reach of their sovereignty. *M'Culloch* v. *Maryland,* 17 U.S. (4 Wheat.) 316, 428; *Nathan* v. *Louisiana,* 49 U.S. (8 How.) 73, 82; *Ward* v. *Maryland,* 79 U.S. (12 Wall.) 418, 426; *North Missouri R. Co.* v. *Maguire,* 87 U.S. (20 Wall.) 46, 62. In the choice of subject-matter there is no restriction, not con-

stitutional, short of one imposed by lack of jurisdiction. 'Whether it be person or property, or possession, franchise or privilege, or occupation or right,' the legislative power to tax extends to it. 'It reaches to every trade or occupation; to every object of industry, use, or enjoyment,' in fact to every subject over which the sovereignty of the State extends, and is co-extensive with that sovereignty. 1 Cooley on Taxation (3d Ed.) 9; Cooley's Constitutional Limitations (7th Ed.) 678; *M'Culloch* v. *Maryland,* 17 U.S. (4 Wheat.) 316, 429; *Providence Bank* v. *Billings,* 29 U.S. (4 Pet.) 514, 563; *Ward* v. *Maryland,* 79 U.S. (12 Wall.) 418, 426; *North Missouri R. Co.* v. *Maguire,* 87 U.S. (20 Wall.) 46, 62."

In *Allied Stores of Ohio* v. *Bowers,* 358 U.S. 522, 526, 79 S. Ct. 437, 3 L. Ed. 2d 480, the United States Supreme Court thus stated the guiding principles: "Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron clad rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. . . . 'To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure.' *Ohio Oil Co.* v. *Conway,* . . . [281 U.S. 146, 159, 50 S. Ct. 310, 74 L. Ed. 775]. . . . 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co.* v. *Kentucky,* 217 U.S.

563, 573 [30 S. Ct. 578, 54 L. Ed. 883].' . . . [I]t has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U.S. . . . [61, 78, 31 S. Ct. 337, 55 L. Ed. 369]; *Quong Wing* v. *Kirkendall,* 223 U.S. 59 [32 S. Ct. 192, 56 L. Ed. 350]; *Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342, 357 [36 S. Ct. 370, 60 L. Ed. 679]; *State Board of Tax Comm'rs* v. *Jackson,* 283 U.S. . . . [527, 537, 51 S. Ct. 540, 75 L. Ed. 1248]."

"This court has also used similar language in describing permissible classification. 'The legislature has a wide discretion in the classification of property for taxation and in granting exemptions. . . . The classification must be reasonable and not arbitrary and must be based upon a distinction which bears a fair and substantial relationship to the object of the legislation so that all who are similarly situated are treated alike.' *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 491, 115 A.2d 455, appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811; see also *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36, 238 A.2d 410." *Kellems* v. *Brown,* 163 Conn. 478, 490, 313 A.2d 53.

It is in the light of these decisions and well-established principles that we now consider the constitutionality of the statute in question as applied to members of the bar. Section 51-81b is the codification of § 30 of 1972 Public Act No. 223, which act was entitled "An Act Concerning Occupational License Fees." The plaintiff correctly points out

that § 30 of Public Act No. 223 (now § 51-81b of the General Statutes) singled out the legal profession for payment of an "occupational tax" and that in that act no other profession or occupation was assessed such a tax. Fees assessed against members of other professions and occupations by Public Act No. 223[3] were assessed as license fees payable to the governmental department or board charged with registration, policing and regulation of the members of the particular profession or occupation, whereas the plaintiff and all other attorneys similarly situated pay the occupational tax assessed by § 51-81b to the state tax commissioner, and the funds so collected are paid into the state's general fund.

The legislative history of the statute in question is of significance. We find its antecedent in § 37 of Public Act No. 8 of the special session of June, 1971, of the General Assembly. This act, entitled "An Act Providing for State Revenue," was a general revenue act which increased the rate of the general sales tax, imposed a tax on the receipt of services from public utilities, imposed a tax on capital gains and dividends, and increased the tax on public utility companies, on cigarettes, on corporations, and the license fees required of most professions. Section 37 provided that each member of the bar should annually receive from the Superior Court a certificate of registration upon the payment of a fee of $150 which should be transmitted to the state treasurer. It was this section, incorporated into the statutes as § 51-81a, which was repealed by § 31

---

[3] Such fees vary in amount. Examples include $200 for private detectives; $150 for dentists, practitioners of medicine, surgeons, and public accountants; $100 for funeral directors; $50 for engineers; $35 for architects and $5 for midwives and manicurists.

of 1972 Public Act No. 223 when, in lieu of it, what is now § 51-81b was adopted as § 30. This 1972 act, entitled "An Act Concerning Occupational License Fees," changed the taxed status from "[a]ny person who has complied with the requirements of the state bar examining committee for admission to the bar of this state" to "[a]ny person who has been admitted as an attorney by the judges of the superior court, and who was engaged in the practice of law, including the performance of judicial duties."

The significance of this legislative history lies in the fact that it discloses that lawyers were not singled out for taxation in an act of "hostile and oppressive discrimination" but were included in the provisions of a general revenue act which levied assessments not only of general impact but also upon most professions and many occupations. Nor do we find it oppressively discriminatory that the fees assessed against the members of other professions were required to be paid to the governmental department or agency charged with the registration, policing and regulation of the members of the particular profession or occupation. Although the fact is not recited in the parties' stipulation of facts, this court will take judicial notice of the fact that it is the judicial department which provides for the admission, suspension and disbarment of attorneys and regulation of their conduct and that the expenses of the judicial department—including investigation of the qualifications of applicants and proceedings for suspension and disbarment—are paid for from the state's general fund as are funds for support of the courts of which they are officers. The tax is plainly not oppressive nor unconstitutionally dis-

criminatory in that it treats attorneys as a class in a manner substantially similar to the treatment accorded other professions.

Attorneys are no more exempt from taxation than other professions and occupations and have no cause to complain so long as the tax contribution required from them is reasonable and not the result of hostile and oppressive discrimination. *In re Johnson,* 47 Cal. App. 465, 190 P. 852; *Franklin* v. *Peterson,* 87 Cal. App. 2d 727, 197 P.2d 788; *In re Gibson,* 35 N.M. 550, 4 P.2d 643; *Clay* v. *Monroe,* 300 N.Y. 724, 92 N.E.2d 61; *Sterling* v. *Philadelphia,* 378 Pa. 538, 106 A.2d 793; *Davis* v. *Ogden City,* 117 Utah 315, 215 P.2d 616, rehearing denied, 118 Utah 401, 223 P.2d 412; *Williams* v. *Richmond,* 177 Va. 477, 14 S.E.2d 287; see also cases cited in 7 Am. Jur. 2d, Attorneys at Law, §§ 201, 202; 7 C.J.S., Attorney and Client, § 55; 16 A.L.R.2d 1228.

The mere fact that a party sees fit to institute an action for a declaratory judgment in no way operates to alter or shift the ordinary rules as to the burden of proof by choosing the procedure of such an action. *Keithan* v. *Massachusetts Bonding & Ins. Co.,* 159 Conn. 128, 267 A.2d 660; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471-72, 217 A.2d 698. We conclude that the plaintiff has not sustained the burden of proving that as to him and other persons similarly situated the provisions of § 51-81b of the General Statutes violate the equal protection provisions of article first, § 1, of the constitution of Connecticut and § 1 of the fourteenth amendment to the constitution of the United States.

The second ground of the plaintiff's claim that § 51-81b is unconstitutional is that the statute is

an attempt by the legislative department of government to regulate the judicial department and is, accordingly, in violation of article second[4] of the constitution of Connecticut.

Stressing the truism that "the power to tax is the power to destroy," it is the plaintiff's basic contention "that, by enacting § 51-81b, the legislature has attempted to tax, and by natural implication to regulate, the judicial department of state government as a class and solely on the basis of the members' status as components of that class." With this contention, we cannot agree. Under our form of government, the taxing power is vested in the legislative department. *Kellems* v. *Brown,* 163 Conn. 478, 487, 313 A.2d 53; *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 198, 132 A. 561; *State* v. *Murphy,* 90 Conn. 662, 666, 98 A. 343. While it is conceivable that the taxing power might be exercised in such a manner as to result in unconstitutional regulation or in contravention of the constitutional separation of magistracies, we find no such circumstance in the present case and none attempted, even by implication. Section 51-81b merely imposes a tax and the means of collecting that tax. The only provision of the statute which suggests regulation of the judicial department aside from the inclusion of the performance of judicial duties in the terms of practicing law is the one which directs that the chief court administrator be notified of the failure of any person to pay the tax and that he "shall" notify the judges of the

[4] "[Conn. Const. Art. 2] The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

Superior Court of such failure. The statute implicitly recognizes the power inherent in the judicial branch of government to determine the qualifications necessary for the practice of law and to discipline and regulate the conduct of attorneys who are officers of its courts. *Heiberger* v. *Clark,* 148 Conn. 177, 169 A.2d 652. The question of the constitutional power of the General Assembly to appoint or prescribe the powers and duties of the chief administrative officer of the judicial department has not been raised or briefed in the limited context of the present case and we are not called upon to consider that question.

The inherent power of the judicial department to control admission to the bar, to discipline its members, and to prescribe rules for their conduct as officers of the court does not confer upon those members immunity or exemption from tax assessments or civil and criminal statutes of general application. We find ourselves in agreement with the observations of the Supreme Court of Utah as expressed in *Davis* v. *Ogden City,* 117 Utah 315, 328, 215 P.2d 616: "As members of the bar, their admission to practice and their professional conduct after admission are essentially matters to be regulated by the judicial department of the state. As members and citizens of the state, county and city, their rights, privileges and immunities, as well as their duty to pay a fair share of the expenses of government, like those of any other citizen, are controlled by the laws, ordinances and regulations of the political body of which they are a part and from which they receive protection. No one could reasonably contend that lawyers as a class are not subject to laws enacted pursuant to the police powers of the state or municipality and the members of the pro-

fession would protest any attempt to deny to them the services afforded by the various sovereignties. There is no rational basis for a contention that lawyers are privileged because of their calling . . . . A license to practice law issued by the state does not grant immunity from taxation."

We conclude that the tax imposed by § 51-81b of the General Statutes on attorneys whose situation is similar to that of the plaintiff is not unconstitutional as a violation of article second of the constitution of Connecticut.

The questions reserved for our advice[5] are answered as follows:

1. No, except that since the question of the constitutionality of the application of the tax to those attorneys whose practice of law includes the performance of judicial duties was neither briefed nor argued, we decline to answer the reserved question as it applies to such persons.

2. No, with the same exception as noted in the answer to question number one.

3. Yes.

4. No.

5. Not answered in view of the answer to question number four.

No costs will be taxed in favor of either party.

In this opinion the other judges concurred.

---

[5] See footnote 2, supra.